JUDGE FURMAN

**Federal Sherman Anti-Trust Act Violation Complaint** 1 9 CV 0075

**Jurisdiction:** New York State **Venue**: The Southern District of New York

## Statement of facts

On 1/7/2000 the plaintiff purchased the condo unit and on 7/16/2005 the plaintiff refinanced the property with E Trade Mortgage See Exhibit 1 Plaintiff E Trade HUD 1 Pages 1-2. Bayview Loan Servicing is now servicing the mortgage. From 6/1/2005 to 11/1/2012 the mortgage payments were paid timely. However, the Plaintiff did not pay the common charges from 11/1/2007 to 2/8/2009. The plaintiff did not pay the common charges, due to a hardship at 169 North 4th Street in Paterson NJ and at 291 Power Street in New Brunswick NJ, which are investment properties own by the plaintiff. In addition, the property was marketed for sale from 1/1/2008 to 2/8/2009.

On 2/9/2009 the plaintiff signed a contract to sell the property to Francisco Hernandez and John Hernandez for $162,000.00. See Exhibit 2 2/9/2009 Signed Hernandez purchase contract.

On 11/19/2009 The defendant 1 breached their fiduciary duty to the plaintiff for not complying with Federal Housing Administration (FHA) condo lending guidelines. Not being a Federal Housing Administration (FHA) approved condo adversely effected home financing options for the plaintiff's condo unit which the defendant 1 as managing agent for the condo complex had a fiduciary duty to the plaintiff to do so. The attached 11/19/2009 signed defendant 1 Condo Questionnaire confirms that defendant 1 did not comply with Federal Housing Administration (FHA) condo lending guidelines due to the condo complex having 19% or 751 Investor units with 10% investor maximum allowed by Federal Housing Administration. The defendant 1 not complying with FHA condo lending guidelines is a Federal Sherman Anti-Trust Act violation which prohibits the defendant 1 from constraining the plaintiff from conducting business freely by limiting home financing options to qualified buyers when selling the condo unit. See Exhibit 3 11/19/2009 Signed Defendant 1 Condo Questionnaire Pages 1-2. See Exhibit 4 Federal Housing Administration FHA Condo Lending Guidelines Pages 1-3

The plaintiff owed $85,434.92 to E Trade Mortgage. See Exhibit 5 11-8-10 E Trade Payoff statement. The plaintiff owed $25,179.61 to defendant 1 in 11/2008. See Exhibit 6 Estimated Parkchester North Condo Common Charges Due pages 1-8 spreadsheet. The plaintiff would have had a net profit of $51,386.00 if defendant 1 did not breached their fiduciary obligation to the plaintiff and comply with Federal Housing Administration (FHA) condo lending guidelines. Not being a Federal Housing Administration (FHA) approved condo adversely effected home financing options for the plaintiff's condo unit which the defendant 1 as managing agent for the condo complex has a fiduciary duty to the plaintiff to do so.

On 12/2009 to 10/2012 the plaintiff did not pay defendant 1 the monthly common charges due to defendant 1 breaching their fiduciary duty to the plaintiff for not complying with Federal Housing Administration (FHA) condo lending guidelines and violating the Federal Sherman Anti-Trust Act.

On 11/16/2012 defendant 1 sold the common charges due to defendant 2. See Exhibit 7A 6-12-12 defendant 2 Common Charge Purchase. Defendant 2 purchasing the common charges is the primary reason why defendant 1 does not comply with Federal Housing Administration (FHA) condo lending guidelines and keeps violating the Federal Sherman Anti-Trust Act. Defendant 1 not complying with Federal Housing Administration (FHA) condo lending guidelines adversely effects the value of the condo unit and the entire condo complex forcing buyers to put a 30% down payment with most buyers electing to by two family properties instead which require the same cash amount out of pocket down payment. Defendant 1 and defendant 2 are working in collusion to violate the Federal Sherman Anti-Trust Act.  Defendant 2 has victimized ten condo unit owners buy purchasing a lien for common charges then foreclosing due to Defendant 1 violating the Federal Sherman Anti-Trust Act.  See attached Exhibit 7B Defendant 2 Lien for Common Charges Purchase Deeds 1-47.

Defendant 1 has caused the plaintiff additional liquidated damages resulting in the plaintiff being forced to stop paying the mortgage with E Trade and forcing E Trade Mortgage to foreclose due to defendant 1 breaching their fiduciary duty to the plaintiff for not complying with Federal Housing Administration (FHA) condo lending guidelines and violating the Federal Sherman Anti-Trust Act which prevented the plaintiff's buyer from purchasing the condo unit in 11/2009. See Exhibit 8 1-8-2016 E trade mortgage foreclosure documents 1-25.

On 1/17/2019 defendant 1 continues to violate the Federal Sherman Anti-Trust Act and continue to breach their fiduciary duty to the plaintiff for not complying with Federal Housing Administration (FHA) condo lending guidelines. The attached 1/17/2019 signed defendant 1 Condo Questionnaire confirms that defendant 1 has still not complied with Federal Housing Administration (FHA) condo lending guidelines due to the condo complex having 25% or 1000 Investor units with 10% investor maximum allowed by Federal Housing Administration. See Exhibit 9 1/17/2019 Signed Defendant 1 Condo Questionnaire Pages 1-2.

### The remedy requested

The plaintiff is seeking the court to order Defendant 1, for breaching their fiduciary obligation on 11/19/2009 and again on 1/17/2019 to comply with Federal Housing Administration (FHA) condo lending guidelines and 10 years of free condo charges, as compensatory damages. 777 million in punitive damages for continuing violating the Sherman Anti-trust Act and causing the plaintiff additional liquidated damages.

The plaintiff is seeking the court to order defendant 2 to return the condo unit to the plaintiff as compensatory damages for working in collusion with defendant 1 to violate the Federal Sherman Anti-Trust Act. 777 million in punitive damages for working in collusion to violate the Sherman Anti-trust Act with defendant 1 and causing the plaintiff additional liquidated damages.

**JURY DEMANDED**.

1/23/19

_____                    Date
Plaintiff: Emanuel Delvalle
        277 James Street Apt 1
        Hackensack, NJ 07601
        Cell phone: 201-819-2125
        Email: pin127@hotmail.com
        Fax # 201-326-5575

**A. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT    HUD-1 UNIFORM SETTLEMENT STATEMENT**

| B. TYPE OF LOAN: | | |
|---|---|---|
| [X] Conventional-Insured | 6. File Number | 7. Loan Number 2005700002 |
| | 8. Mortgage Insurance Case Number  3874779220 | |

C. Note: this form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(P.O.C.)" were paid outside the closing. They are shown here for informational purposes and are not included in the totals. Note: TIN = Taxpayer's ID number. WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see 18 U.S. Code Sec. 1001 and Sec. 1010.

| | | |
|---|---|---|
| D. | BORROWER Name and address | Emanuel Delvalle<br>277 James Street<br>Hackensack, New Jersey 07601 |
| E. | SELLER Name, address TIN | |
| F. | LENDER Name and address | E*Trade Bank<br>671 N. Glebe Road, Arlington, VA. 22203 |
| G. | PROPERTY LOCATION | 1503 Metropolitan Avenue, Unit #7B<br>Bronx, New York 10463 |
| H. | SETTLEMENT AGENT Name, address TIN | David M. Gladstone<br>One Barker Avenue<br>White Plains, N.Y. 10601-1517 |
| | PLACE OF SETTLEMENT | One Barker Avenue<br>White Plains, New York 10601 |

Settlement Date:   7/14/05

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100 GROSS AMOUNT DUE FROM BORROWER:** | | **400 GROSS AMOUNT DUE TO SELLER:** | |
| 101 Contract sales price | | 401 Contract sales price | |
| 102 Personal property | | 402 Personal property | |
| 103 Borrower settlement charges (line 1400) | 6,620.09 | 403 | |
| 104 Payoff to Chase | 31,159.19 | 404 | |
| 105 | | 405 | |
| *Adjustments for items paid by seller in advance* | | *Adjustments for items paid by seller in advance* | |
| 106 City/town taxes | | 406 City/town taxes | |
| 107 County taxes | | 407 County taxes | |
| 108 Assessments | | 408 Assessments | |
| 109 | | 409 | |
| 110 | | 410 | |
| 111 | | 411 | |
| 112 | | 412 | |
| 120  **GROSS AMOUNT DUE FROM BORROWER** | 37,779.28 | 420  **GROSS AMOUNT DUE TO SELLER** | |
| **200 AMOUNTS PAID BY OR ON BEHALF OF BORROWER:** | | **500 REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201 Deposit or earnest money | | 501 Excess deposit (see instructions) | |
| 202 Principal amount of new loan(s) | 86,000.00 | 502 Settlement charges to seller (line 1400) | |
| 203 Existing loan(s) taken subject to | | 503 Existing loan(s) taken subject to | |
| 204 | | 504 Payoff of first mortgage loan | |
| 205 | | 505 Payoff of second mortgage loan | |
| 206 | | 506 | |
| 207 | | 507 | |
| 208 | | 508 | |
| 209 | | 509 | |
| *Adjustments for items unpaid by seller* | | *Adjustments for items unpaid by seller* | |
| 210 City/town taxes | | 510 City/town taxes | |
| 211 County taxes | | 511 County taxes | |
| 212 Assessments | | 512 Assessments | |
| 213 School Tax | | 513 School Tax | |
| 214 | | 514 | |
| 215 | | 515 | |
| 216 | | 516 | |
| 217 | | 517 | |
| 218 | | 518 | |
| 219 | | 519 | |
| 220  **TOTAL PAID BY/FOR BORROWER** | 86,000.00 | 520  **TOTAL REDUCTION IN AMOUNT DUE SELLER** | |
| **300 CASH AT SETTLEMENT FROM/TO BORROWER** | | **600 CASH AT SETTLEMENT TO/FROM SELLER** | |
| 301 Gross amt due from borrower (Ln 120) | | 601 Gross amt due to seller (Ln 420) | |
| 302 Less amt paid by/for borrower (Ln 220) | 86,000.00 | 602 Less reduction in amt due seller (520) | |
| 303 CASH [ ]FROM [ ]TO BORROWER | 48,220.72 | 603 CASH [ ]TO [ ]FROM SELLER | |

Exhibit 1 Plaintiff . E*Trade HUD 1 page 1

**L. SETTLEMENT CHARGES**

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| **700 TOTAL SALES/BROKER'S COMMISSION** based on price $ @ % = | | | |
| Division of Commission (line 700) as follows: | | | |
| 701 $ to | | | |
| 702 $ to | | | |
| 703 Commission paid at settlement | | | |
| 704 | | | |
| **800 ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801 Lender Loan Fee to | | | |
| 802 Loan Origination fee 1.00 % to One Source Mortgage Corporation (POC) | | | |
| 803 Appraisal Fee to One Source Mortgage Corporation | | 860.00 | |
| 804 Application Fee One Source Mortgage Corporation | | 350.00 | |
| 805 Underwriting Fee to E*Trade | | 295.00 | |
| 806 Tax Service Fee to First American | | 400.00 | |
| 807 Flood Cert Fee to First American | | 85.00 | |
| 808 Doc Prep Fee to E*Trade | | 9.50 | |
| 809 Wire Fee to E*Trade | | 100.00 | |
| 810 | | 25.00 | |
| 811 Yield Spread Premium paid by E*Trade to One Source Mortgage Corp. $1,720.00 poc | | | |
| **900 ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901 Interest from 7/14/05 to 8/1/05 @ $ 14.73 /day | | | |
| 902 Mortgage Insurance Premium for months to | | 265.14 | |
| 903 Hazard Insurance Premium for years to | | | |
| 904 years to | | | |
| 905 Mortgage Insurance Fee | | | |
| **1000 RESERVES DEPOSITED WITH LENDER** | | | |
| 1001 Hazard insurance months @ $ per month | | | |
| 1002 Mortgage insurance premium for months @ $ per month | | | |
| 1003 Town property taxes months @ $ per month | | | |
| 1004 City property taxes 3 months @ $51.83 per month | | | |
| 1005 Annual assessments months @ $ per month | | 155.49 | |
| 1006 School Taxes months @ $ per month | | | |
| 1007 Village Tax months @ $ per month | | | |
| 1008 Aggregate Accounting Adjustment | | | |
| **1100 TITLE CHARGES** | | (0.04) | |
| 1101 Settlement or closing fee to Richard Ortiz - Titleclosr | | | |
| 1102 Abstract or title search to | | 190.00 | |
| 1103 Title examination to | | | |
| 1104 Title insurance binder to | | | |
| 1105 Document preparation to | | | |
| 1106 Escrow Fee for Tax Payment to | | | |
| 1107 Attorney's fees to David M. Gladstone | | | |
| (includes above item numbers ) | | 600.00 | |
| 1108 Title insurance to Charterland Title | | 419.00 | |
| (includes above item numbers ) | | | |
| 1109 Lender's coverage $ 26,000 | | | |
| 1110 Owner's coverage $ | | | |
| 1111 Searches | | 400.00 | |
| 1112 Endorsement | | 100.00 | |
| 1113 | | | |
| **1200 GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201 Recording fees: Deed $ Mortgage $ 190 Releases $ 90 | | 280.00 | |
| 1202 City/city tax/stamps: Deed $ Mortgage $ | | | |
| 1203 State tax/stamps Deed $ Mortgage $ 1518 | | 1518.00 | |
| 1204 | | | |
| 1205 Lender Paid Mortgage Tax $215.00 poc by E*Trade | | | |
| **1300 ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301 Survey to | | | |
| 1302 | | | |
| 1303 RE Taxes | | | |
| 1304 Escrow S/C to Title | | 518.00 | |
| 1305 | | 50.00 | |
| **1400 TOTAL SETTLEMENT CHARGES** (enter on lines 103, Section J and 502, Section K) | | 6,620.09 | |

CERTIFICATION: I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____ Borrower  _____ Seller

_____ Borrower  _____ Seller

To the best of my knowledge the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

_____ Settlement Agent    7/14/05    Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see Title 18 U.S. Code Section 1001 and Section 1010.

Exhibit 1 Plaintiff · ETrade HUD 1 page 8

146—Contract of sale, condominium unit, 7-06.

©2006 by Blumberg Excelsior, Inc., Publisher, NYC 10013
www.blumberg.com

CONTRACT OF SALE—CONDOMINIUM UNIT (2000): This form was originally prepared by the Real Property Section of the New York State Bar Association and the Committee on Real Property Law and the Committee on Cooperative and Condominium Law of the Association of the Bar of the City of New York.
Note: This form is intended to deal with matters common to most transactions involving the sale of a condominium unit. Provisions should be added, altered or deleted to suit the circumstances of a particular transaction. No representation is made that this form of contract complies with Section 5-702 of the General Obligations Law ("Plain Language Law").

## CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

## Contract of Sale Condominium Unit

**Agreement** made as of February 9th 2009                    between

7B Land Trust c/o Richard Rivera

residing at
277 James Street
Hackensack, New Jersey 07601
and
Francisco Hernandez and Andrew Anthony Hernandez                    ("Seller")

residing at
1503 Metropolitan Ave Apt 7B
Bronx, New York 10462                    ("Purchaser").

**1. Unit.** Seller agrees to sell and convey, and Purchaser agrees to purchase, Unit No. 7B ("Unit") in the building ("Building") known as Parkchester North Condominium Condominium ("Condominium") and located at 1503 Metropolitan Ave . New York, together with a              percent undivided interest in the Common Elements (as defined in para. 6) appurtenant thereto, all upon and subject to the terms and conditions set forth herein. The Unit shall be as designated in the Declaration of Condominium Ownership (as the same may be amended from time to time, the "Declaration") of the Condominium, recorded in              County, New York or the By-Laws (as the same may be amended from time to time, the "ByLaws") of the Condominium.

**2. Personal Property:** (a) The sale includes all of Seller's right, title and interest, if any, in and to:

(i) the refrigerators, freezers, ranges, ovens, built-in microwave ovens, dishwashers, washing machines, clothes dryers, cabinets and counters, lighting and plumbing fixtures, chandeliers, air conditioning equipment, venetian blinds, shades, screens, storm windows and other window treatments, wall-to-wall carpeting, bookshelves, switchplates, door hardware and mirrors, built-ins and articles of property and fixtures attached to or appurtenant to the Unit, except those listed in subpara. 2(b), all of which included property and fixtures are represented to be owned by Seller, free and clear of all liens and encumbrances other than those encumbrances ("Permitted Exceptions") set forth on Schedule A annexed hereto and made a part hereof (strike out inapplicable items); and

(ii)

(b) Excluded from this sale are:
(i) furniture and furnishings (other than as specifically provided in this Contract); and
(ii)

(c) The property referred to in subpara. 2(a)(i) and (ii) may not be purchased if title to the Unit is not conveyed hereunder.

**3. Purchase Price:** (a) The purchase price ("Purchase Price") is $ 165,500.00                    , payable as follows:
(i) $ 3,500.00              ("Downpayment") on the signing of this Contract by good check subject to collection, the receipt of which is

hereby acknowledged, to be held in escrow pursuant to para. 16; and
(ii) $ 162,000.00              constituting the balance of the Purchase Price, by certified check of Purchaser or official bank check (except as otherwise provided in this Contract) on the delivery of the deed as hereinafter provided.

(b) All checks in payment of the Purchase Price shall represent United States currency and be drawn on or issued by a bank or trust company authorized to accept deposits in New York State. All checks in payment of the Downpayment shall be payable to the order of Escrowee (as hereinafter defined). All checks in payment of the balance of the Purchase Price shall be payable to the order of Seller (or as Seller otherwise directs pursuant to subparas. 6(a)(viii) or 18(b)).

(c) Except for the Downpayment and checks aggregating not more than one-half of one percent of the Purchase Price, including payment for closing adjustments, all checks delivered by Purchaser shall be certified or official bank checks as hereinabove provided.

**4. Closing of Title:** The closing documents referred to in para. 6 shall be delivered, and payment of the balance of the Purchase Price shall be made, at the closing of title ("Closing"), to be held on
December 1st              at 9am              M., at the offices of
Buyer's attorney office or TBD

or at the office of Purchaser's lending institution or its counsel; provided, however, that such office is located in either the City or County in which either (a) Seller's attorney maintains an office or (b) the Unit is located.

*Exhibit 2 2/9/09, Signed Hernandez Purchase Contract pg 1*

PAGE 01/08              EMANUEL DELVALLE              2014887047              01/01/2012  07:06AM

**5. Representations, Warranties and Covenants:** Seller represents, warrants and covenants that:

(a) Seller is the sole owner of the Unit and the property referred to in subpara. 2(a) and Seller has the full right, power and authority to sell, convey and transfer the same;

(b) The common charges (excluding separately billed utility charges) for the Unit on the date hereof are $ 766.83                     per month;

(c) Seller has not received any written notice of any intended assessment or increase in common charges not reflected in subpara. 5(b). Purchaser acknowledges that it will not have the right to cancel this Contract in the event of the imposition of any assessment or increase in common charges after the date hereof of which Seller has not heretofore received written notice;

(d) The real estate taxes for the Unit for the fiscal year of 2009
                        through                    are $ 0.00                  :
J51 Tax Abatement
(e) Seller is not a "sponsor" or a nominee of a "sponsor" under any plan of condominium organization affecting the Unit;

(f) All refrigerators, freezers, ranges, dishwashers, washing machines, clothes dryers and air conditioning equipment included in this sale will be in working order at the time of Closing;

(g) If a copy is attached to this Contract, the copy of the Certificate of Occupancy covering the Unit is a true and correct copy; and

(h) Seller is not a "foreign person" as defined in para. 17. (If inapplicable, delete and provide for compliance with Code Withholding Section, as defined in para. 17.)

**6. Closing Documents:** (a) At the Closing, Seller shall deliver to Purchaser the following:

(i) Bargain and sale deed with                     covenant against grantor's acts ("Deed"). complying with RPL § 339-o and containing the covenant required by LL § 13(5), conveying to Purchaser title to the Unit, together with its undivided interest in the Common Elements (as such term is defined in the Declaration and which term shall be deemed to include Seller's right, title and interest in any limited common elements attributable to or used in connection with the Unit) appurtenant thereto, free and clear of all liens and encumbrances other than Permitted Exceptions. The Deed shall be executed and acknowledged by Seller and, if requested by the Condominium, executed and acknowledged by Purchaser, in proper statutory form for recording;

(ii) If a corporation and if required pursuant to BCL § 909, Seller shall deliver to Purchaser (1) a resolution of its board of directors authorizing the delivery of the Deed and (2) a certificate executed by an officer of such corporation certifying as to the adoption of such resolution and setting forth facts demonstrating that the delivery of the Deed is in conformity with the requirements of BCL § 909. The Deed shall also contain a recital sufficient to establish compliance with such law;

(iii) A waiver of right of first refusal of the board of managers of the Condominium ("Board") if required in accordance with para. 8;

(iv) A statement by the Condominium or its managing agent that the common charges and any assessments then due and payable the

Condominium have been paid to the date of the Closing;

(v) All keys to the doors of, and mailbox for, the Unit;

(vi) Such affidavits and/or other evidence as the title company ("Title Company") from which Purchaser has ordered a title insurance report and which is authorized to do business in New York State shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against Seller and persons or entities whose names are the same as or are similar to Seller's name;

(vii) New York City Real Property Transfer Tax Return, if applicable, and New York State Real Estate Transfer Tax Return, prepared, executed and acknowledged by Seller in proper form for submission;

(viii) Checks in payment of all applicable real property transfer taxes except a transfer tax which by law is primarily imposed on the purchaser ("Purchaser Transfer Tax") due in connection with the sale. In lieu of delivery of such checks, Seller shall have the right, upon reasonable prior notice to Purchaser, to cause Purchaser to deliver said checks at the Closing and to credit the amount thereof against the balance of the Purchase Price. Seller shall pay the additional transfer taxes, if any, payable after the Closing by reason of the conveyance of the Unit, which obligation shall survive the Closing;

(ix) Certification that Seller is not a foreign person pursuant to para. 17 or a withholding certificate from the Internal Revenue Service. (If inapplicable, delete and provide for compliance with Code Section, as defined in para. 17.); and

(x) Affidavit that a single station smoke detecting alarm device is installed pursuant to New York Executive Law §378(5).

(b) At the Closing, Purchaser shall deliver to Seller the following:
(i) Checks in payment of (y) the balance of the Purchase Price in accordance with subpara. 3(b) and (z) any Purchaser Transfer Tax;

(ii) If required by the Declaration or By-Laws, power of attorney to the Board, prepared by Seller, in the form required by the Condominium. The power of attorney shall be executed and acknowledged by Purchaser and, after being recorded, shall be sent to the Condominium;

(iii) New York City Real Property Transfer Tax Return executed and acknowledged by Purchaser and an Affidavit in Lieu of Registration pursuant to New York Multiple Dwelling Law, each in proper form for submission, if applicable; and

(iv) If required, New York State Equalization Return executed and acknowledged by Purchaser in proper form for submission.

(c) It is a condition of Purchaser's obligation to close title hereunder that:

(i) All notes or notices of violations of law or governmental orders, ordinances or requirements affecting the Unit and noted or issued by any governmental department, agency or bureau having jurisdiction which were noted or issued on or prior to the date hereof shall have been cured by Seller;

(ii) Any written notice to Seller from the Condominium (or its duly authorized representative) that the Unit is in violation of the Declaration,

By-Laws or rules and regulations of the Condominium shall have been cured; and

(iii) The Condominium is a valid condominium created pursuant to RPL Art. 9-B and the Title Company will so insure.

**7. Closing Adjustments:** (a) The following adjustments shall be made as of 11:59 P.M. of the day before the Closing:

(i) Real estate taxes and water charges and sewer rents, if separately assessed, on the basis of the fiscal period for which assessed, except that if there is a water meter with respect to the Unit, apportionment shall be based on the last available reading, subject to adjustment after the Closing, promptly after the next reading is available; provided, however, that in the event real estate taxes have not, as of the date of Closing, been separately assessed to the Unit, real estate taxes shall be apportioned on the same basis as provided in the Declaration or By-Laws or, in the absence of such provision, based upon the Unit's percentage interest in the Common Elements;

(ii) Common charges of the Condominium; and

(iii) If fuel is separately stored with respect to the Unit only, the value of fuel stored with respect to the Unit at the price then charged by Seller's supplier (as determined by a letter or certificate to be obtained by Seller from such supplier), including any sales taxes.

(b) If at the time of Closing the Unit is affected by an assessment which is or may become payable in installments, then, for the purposes of this Contract, only the unpaid installments which are then due shall be considered due and are to be paid by Seller at the Closing. All subsequent installments at the time of Closing shall be the obligation of Purchaser.

(c) Any errors or omissions in computing closing adjustments shall be corrected. This subpara. 7(c) shall survive the Closing.

(d) If the Unit is located in the City of New York, the "customs in respect to title closings" recommended by The Real Estate Board of New York, Inc., as amended and in effect on the date of Closing, shall apply to the adjustments and other matters therein mentioned, except as otherwise provided herein.

**8. Right of First Refusal:** If so provided in the Declaration or ByLaws, this sale is subject to and conditioned upon the waiver of a right of first refusal to purchase the Unit held by the Condominium and exercisable by the Board. Seller agrees to give notice promptly to the Board of the contemplated sale of the Unit to Purchaser, which notice shall be given in accordance with the terms of the Declaration and By-Laws, and Purchaser agrees to provide promptly all applications, information and references reasonably requested by the Board. If the Board shall exercise such right of first refusal, Seller shall promptly refund to Purchaser the Downpayment (which term, for all purposes of this Contract, shall be deemed to include interest, if any, earned thereon) and upon the making of such refund this Contract shall be deemed cancelled and of no further force or effect and neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this Contract. If the Board shall fail to exercise such right of first refusal within the time and in the manner provided for in the Declaration or By-Laws and shall declare in writing its intention not to exercise such right of first refusal (a copy of which writing shall be delivered to Purchaser promptly following receipt

thereof), the parties hereto shall proceed with this sale in accordance with the provisions of this Contract.

**9. Processing Fee:** Seller shall, at the Closing, pay all fees and charges payable to the Condominium (and/or its managing agent) in connection with this sale, including, without limitation, any processing fee, the legal fees, if any, of the Condominium's attorney in connection with this sale and, unless otherwise agreed to by Seller and Purchaser in writing, all "flip taxes," transfer or entrance fees or similar charges, if any, payable to or for the Condominium or otherwise for the benefit of the Condominium unit owners, which arise by reason of this sale.

**10. No Other Representations:** Purchaser has examined and is satisfied with the Declaration, By-Laws and rules and regulations of the Condominium, or has waived the examination thereof. Purchaser has inspected the Unit, its fixtures, appliances and equipment and the personal property, if any, included in this sale, as well as the Common Elements of the Condominium, and knows the condition thereof and, subject to subpara. 5(f), agrees to accept the same "as is," i.e., in the condition they are in on the date hereof, subject to normal use, wear and tear between the date hereof and the Closing. Purchaser has examined or waived examination of the last audited financial statements of the Condominium, and has considered or waived consideration of all other matters pertaining to this Contract and to the purchase to be made hereunder, and does not rely on any representations made by any broker or by Seller or anyone acting or purporting to act on behalf of Seller as to any matters which might influence or affect the decision to execute this Contract or to buy the Unit, or said personal property, except those representations and warranties which are specifically set forth in this Contract.

**11. Possession:** Seller shall, prior to the Closing, remove from the Unit all furniture, furnishings and other personal property not included in this sale, shall repair any damage caused by such removal, and shall deliver exclusive possession of the Unit at the Closing, vacant, broom-clean and free of tenancies or other rights of use or possession.

**12. Access:** Seller shall permit Purchaser and its architect, decorator or other authorized persons to have the right of access to the Unit between the date hereof and the Closing for the purpose of inspecting the same and taking measurements, at reasonable times and upon reasonable prior notice to Seller (by telephone or otherwise). Further, Purchaser shall have the right to inspect the Unit at a reasonable time during the 24-hour period immediately preceding the Closing.

**13. Defaults and Remedies:** (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

**14. Notices:** Any notice, request or other communication ("Notice") given or made hereunder (except for the notice required by para. 12), shall be in writing and either (a) sent by any of the parties hereto or their respective attorneys, by registered or certified mail, return receipt requested, postage prepaid, or (b) delivered in person or by overnight courier, with

receipt acknowledged, to the address given at the beginning of this Contract for the party to whom the Notice is to be given, or to such other address for such party as said party shall hereafter designate by Notice given to the other party pursuant to this para. 14, or (c) with respect to para. 6(a)(viii) or para. 18(b), sent by fax to the party's attorney. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same and each Notice delivered in person or by overnight courier shall be deemed given when delivered. A copy of each notice sent to a party shall also be sent to the party's attorney. Each notice sent by fax shall be deemed given when transmission is confirmed by the sender's fax machine. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries.

15. **Purchaser's Lien:** The Downpayment and all other sums paid on account of this Contract and the reasonable expenses of the examination of title to, and departmental violation searches in respect of, the Unit are hereby made a lien upon the Unit, but such lien shall not continue after default by Purchaser hereunder.

16. **Downpayment in Escrow:** (a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at the depository identified at the end of this Contract until Closing or sooner termination of this Contract and shall pay over or apply the Downpayment in accordance with the terms of this para. 16. Escrowee shall hold the Downpayment in a(n) JC Realty Mgt LLC — — bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 14) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this Contract or a final, nonappealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment with the clerk of a court in the county in which the Unit is located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this para. 16, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this Contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered

by Escrowee in bad faith or in willful disregard of this Contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this para. 16 by signing in the place indicated in this Contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

17. **FIRPTA:** Seller represents and warrants to Purchaser that Seller is not a "foreign person" as defined in IRC § 1445, as amended, and the regulations issued thereunder ("Code Withholding Section"). At the Closing Seller shall deliver to Purchaser a certificate stating that Seller is not a foreign person in the form then required by the Code Withholding Section or a withholding certificate from the Internal Revenue Service. In the event Seller fails to deliver the aforesaid certificate or in the event that Purchaser is not entitled under the Code Withholding Section to rely on such certificate, Purchaser shall deduct and withhold from the Purchase Price a sum equal to 10% thereof and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

18. **Title Report; Acceptable Title:** (a) Purchaser shall, promptly after the date hereof, or after receipt of the mortgage commitment letter, if applicable, order a title insurance report from the Title Company. Promptly after receipt of the title report and thereafter of any continuations thereof and supplements thereto, Purchaser shall forward a copy of each such report, continuation or supplement to the attorney for Seller. Purchaser shall further notify Seller's attorney of any other objections to title not reflected in such title report of which Purchaser becomes aware following the delivery of such report, reasonably promptly after becoming aware of such objections.

(b) Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties thereon to a date not less than two days following the date of Closing, and any other liens and encumbrances which Seller is obligated to pay and discharge or which are against corporations, estates or other persons in the chain of title, together with the cost of recording or filing any instruments necessary to discharge such liens and encumbrances of record, may be paid out of the proceeds of the monies payable at the Closing if Seller delivers to Purchaser at the Closing official bills for such taxes, assessments, water charges, sewer rents, interest and penalties and instruments in recordable form sufficient to discharge any other liens and encumbrances of record. Upon request made a reasonable time before the Closing, Purchaser shall provide at the Closing separate checks for the foregoing payable to the order of the holder of any such lien, charge or encumbrance and otherwise complying with subpara. 3(b). If the Title Company is willing to insure Purchaser that such charges, liens and encumbrances will not be collected out of or enforced against the Unit and is willing to insure the lien of Purchaser's

Institutional Lender (as hereinafter defined) free and clear of any such charges, liens and encumbrances, then Seller shall have the right in lieu of payment and discharge to deposit with the Title Company such funds or to give such assurances or to pay such special or additional premiums as the Title Company may require in order to so insure. In such case the Title Company may require in order to so insure. In such case the charges, liens and encumbrances with respect to which the Title Company has agreed so to insure shall not be considered objections to title.

(c) Seller shall convey and Purchaser shall accept fee simple title to the Unit in accordance with the terms of this Contract, subject only to: (a) the Permitted Exceptions and (b) such other matters as (i) the Title Company or any other title insurer licensed to do business by the State of New York shall be willing, without special or additional premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Unit and (ii) shall be accepted by any lender which has committed in writing to provide mortgage financing to Purchaser for the purchase of the Unit ("Purchaser's Institutional Lender"), except that if such acceptance by Purchaser's Institutional Lender is unreasonably withheld or delayed, such acceptance shall be deemed to have been given.

(d) Notwithstanding any contrary provisions in this Contract, express or implied, or any contrary rule of law or custom, if Seller shall be unable to convey the Unit in accordance with this Contract (provided that Seller shall release, discharge or otherwise cure at or prior to Closing any matter created by Seller after the date hereof and any existing mortgage, unless this sale is subject to it) and if Purchaser elects not to complete this transaction without abatement of the Purchase Price, the sole obligation and liability of Seller shall be to refund the Downpayment to Purchaser, together with the reasonable cost of the examination of title to, and departmental violation searches in respect of, the Unit, and upon the making of such refund and payment, this Contract shall be deemed cancelled and of no further force or effect and neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this Contract. However, nothing contained in this subpara. 18(d) shall be construed to relieve Seller from liability due to a willful default.

19. Risk of Loss; Casualty: (a) The risk of loss or damage to the Unit or the personal property included in this sale, by fire or other casualty, until the earlier of the Closing or possession of the Unit by Purchaser, is assumed by Seller, but without any obligation of Seller to repair or replace any such loss or damage unless Seller elects to do so as hereinafter provided. Seller shall notify Purchaser of the occurrence of any such loss or damage to the Unit or the personal property included in this sale within 10 days after such occurrence or by the date of Closing, whichever first occurs, and by such notice shall state whether or not Seller elects to repair or restore the Unit and/or the personal property, as the case may be. If Seller elects to make such repairs and restorations, Seller's notice shall set forth an adjourned date for the Closing, which shall be not more than 60 days after the date of the giving of Seller's notice. If Seller either does not elect to do so or, having elected to make such repairs and restorations, fails to complete the same on or before said adjourned date for the Closing, Purchaser shall have the following options:

(i) To declare this Contract cancelled and of no further force or effect and receive a refund of the Downpayment in which event neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this Contract; or

(ii) To complete the purchase in accordance with this Contract without reduction in the Purchase Price, except as provided in the next sentence. If Seller carries hazard insurance covering such loss or damage, Seller

shall turn over to Purchaser at the Closing the net proceeds actually collected by Seller under the provisions of such hazard insurance policies to the extent that they are attributable to loss of or damage to any property included in this sale, less any sums theretofore expended by Seller in repairing or replacing such loss or damage or in collecting such proceeds; and Seller shall assign (without recourse to Seller) Seller's right to receive any additional insurance proceeds which are attributable to the loss of or damage to any property included in this sale.

(b) If Seller does not elect to make such repairs and restorations, Purchaser may exercise the resulting option under (i) or (ii) of (a) above only by notice given to Seller within 10 days after receipt of Seller's notice. If Seller elects to make such repairs and restorations and fails to complete the same on or before the adjourned closing date, Purchaser may exercise either of the resulting options within 10 days after the adjourned closing date.

(c) In the event of any loss of or damage to the Common Elements which materially and adversely affects access to or use of the Unit, arising after the date of this Contract but prior to the Closing, Seller shall notify Purchaser of the occurrence thereof within 10 days after such occurrence or by the date of Closing, whichever occurs first, in which event Purchaser shall have the following options:

(i) To complete the purchase in accordance with this Contract without reduction in the Purchase Price; or

(ii) To adjourn the Closing until the first to occur of (1) completion of the repair and restoration of the loss or damage to the point that there is no longer a materially adverse effect on the access to or use of the Unit or (2) the 60th day after the date of the giving of Seller's aforesaid notice. In the event Purchaser elects to adjourn the Closing as aforesaid and such loss or damage is not so repaired and restored within 60 days after the date of the giving of Seller's aforesaid notice, then Purchaser shall have the right either to (x) complete the purchase in accordance with this Contract without reduction in the Purchase Price or (y) declare this Contract cancelled and of no further force or effect and receive a refund of the Downpayment, in which latter event neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this Contract.

(d) In the event of any loss of or damage to the Common Elements which does not materially and adversely affect access to or use of the Unit, Purchaser shall accept title to the Unit in accordance with this Contract without abatement of the Purchase Price.

20. Internal Revenue Service Reporting Requirement: Each party shall execute, acknowledge and deliver to the other party such instruments, and take such other actions, as such other party may reasonably request in order to comply with IRC § 6045(e), as amended, or any successor provision or any regulations promulgated pursuant thereto, insofar as the same requires reporting of information in respect of real estate transactions. The provisions of this para. 20 shall survive the Closing. The parties designate

as the attorney responsible for reporting this information as required by law.

21. Broker: Seller and Purchaser represent and warrant to each other that the only real estate broker with whom they have dealt in connection

with this Contract and the transaction set forth herein is
**JC Realty Management LLC**

and that they know of no other real estate broker who has claimed or may have the right to claim a commission in connection with this transaction. The commission of such real estate broker shall be paid by Seller pursuant to separate agreement. If no real estate broker is specified above, the parties acknowledge that this Contract was brought about by direct negotiation between Seller and Purchaser and each represents to the other that it knows of no real estate broker entitled to a commission in connection with this transaction. Seller and Purchaser shall indemnify and defend each other against any costs, claims or expenses (including reasonable attorneys' fees) arising out of the breach on their respective parts of any representation, warranty or agreement contained in this para. 21. The provisions of this para. 21 shall survive the Closing or, if the Closing does not occur, the termination of this Contract.

22. **Mortgage Commitment Contingency.** *(Delete paragraph if inapplicable)* (a) The obligation of Purchaser to purchase under this Contract is conditioned upon issuance, on or before **November 20th** days after a fully executed copy of this Contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 14 or subparagraph 22(k) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of **$ 158,880** for a term of at least **30** years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 22(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this Contract even if the lender fails or refuses to fund the loan for any reason.

(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 22(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

(c) *(Delete this subparagraph if inapplicable)* Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in subparagraph 22(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).

(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this Contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 22.

(e) If no Commitment is issued by the Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 22(a), Purchaser may cancel this Contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 22.

(f) If this Contract is canceled by Purchaser pursuant to subparagraphs 22(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this Contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 21.

(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 22(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this Contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 22.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this Contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this Contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all of its obligations under this paragraph 22) and except as set forth in paragraph 21.

(i) The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries under this paragraph 22.

(j) For purposes of this Contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(k) For purposes of subparagraph (a), Purchaser shall be deemed to have been given a fully executed copy of this Contract on the third business day following the date of ordinary or regular mailing, postage prepaid.

23. **Gender, Etc.:** As used in this Contract, the neuter includes the masculine and feminine, the singular includes the plural and the plural includes the singular, as the context may require.

**24. Entire Contract:** All prior understandings and agreements between Seller and Purchaser are merged in this Contract and this Contract supersedes any and all understandings and agreements between the parties and constitutes the entire agreement between them with respect to the subject matter hereof.

**25. Captions:** The captions in this Contract are for convenience and reference only and in no way define, limit or describe the scope of this Contract and shall not be considered in the interpretation of this Contract or any provision hereof.

**26. No Assignment by Purchaser:** Purchaser may not assign this Contract or any of Purchaser's rights hereunder.

**27. Successors and Assigns:** Subject to the provisions of para. 26, the provisions of this Contract shall bind and inure to the benefit of both Purchaser and

Seller and their respective distributees, executors, administrators, heirs, legal representatives, successors and permitted assigns.

**28. No Oral Changes:** This Contract cannot be changed or terminated orally. Any changes or additional provisions must be set forth in a rider attached hereto or in a separate written agreement signed by both parties to this Contract.

**29. Contract Not Binding Until Signed:** This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser.

**30. Lead-Based Paint:** If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

31. Seller agrees to give the buyer a $6,500.00 sales concession for closing cost, lender points, and escrows.

32. Seller agrees to give the buyer a $500.00 for new appliances.

33. Seller's attorney is William Gahwyler Esq. P.O. Box 332 Midland Park, N.J. 07432 201-315-7257 cell phone contact njrelaw@aol.com email contact address.

34. Buyer's attorney is Peter Nguyen Esq. 1809 Paulding Ave Bronx, N.Y. 10462 718-892-4666 office phone contact, pnguyen@parknguyenlaw.com email address.

**In Witness Whereof,** the parties hereto have duly executed this Contract on the day and year first above written.

_____  2/9/09
Seller                    (Soc. Sec. No.)

_____
Seller                    (Soc. Sec. No.)

Agreed to as to para. 16: _____
                          Escrowee

_____  2/9/09
Purchaser                 (Soc. Sec. No.)

_____  2/9/09
Purchaser                 (Soc. Sec. No.)

Escrow Depository: JC Realty Management LLC

Address: 277 James Street
         Hackensack, N.J. 07601

Page 1 of 1

**FRANCISCO HERNANDEZ**  10-06          201
584 ACADEMY ST 33
NEW YORK, NY 10034                        55-55/212
                                               43
                         Date 2/9/09

Pay to the
Order of   JC REALTY MGMT          | $ 2,100

Two thousand One Hundred °⁰⁄₁₀₀ Dollars

Commerce
Bank   Open Early.
       Open Late

For 5103 METRO APT 7B ESCROW

⑆021200957⑈ ⑈345⑈ 2306836⑈ 0201

SPL 0544299560          >03120      PAY TO THE ORDER OF
R061 B6 PO                          COMMERCE BANK, NORTH
02/10/2009              TD BANK     HACKENSACK, NJ 07601
                       CHERRY       121200957
                                    FOR DEPOSIT ONLY
                                    JC REALTY MANAGEMENT LLC
                                    3451472309

Account:3452306836  Check#:201  Amount:$2,100.00  Date Presented:02-10-2009

01/01/2012  07:06AM  20148887047  EMANUEL DELAVALLE  PAGE  08/08

*Exhibit 3 11/19/09 Signed Parkchester North Condo Questionnaire*
*Page 1-2*

## CONDO/PUD HOMEOWNERS ASSOCIATION CERTIFICATION

Applicant(s) Name:   Francisco Hernandez and Andrew Anthony Hernandez

Property Address:   1503 Metropolitan Avenue Apt 7B

Bronx, NY 10462

Dear Homeowners Association Officer:

We have received an application for a mortgage on a unit in the above referenced project. In order to facilitate the mortgage process, the following information is to be completed by an Officer/Trustee of the Homeowners Association or the Management Company.

I hereby certify that:

1) Control of the Homeowners Association was turned over to the unit purchasers on ___11/1989___

2) Are all common areas, facilities, and individual units completed, including those that are part of a Master Association? ☑ Yes   ☐ No

3) Can additional phases or units expand the project not yet constructed, including those that are part of a Master Association?   ☐ Yes   ☑ No

4) Total Units in Project         3985
   # of Units Sold & Closed       2368        % of Total Units   60   %
   # of Units Owner Occupied      1617        % of Total Units   40   %
   # of Units Second Homes                    % of Total Units        %
   # of Units Non-Owner Occupied  751         % of Total Units   19   %
   # of Units Vacant                          % of Total Units        %
   # of Units Sponsor Owned       1617        % of Total Units   40   %

5) Are all units owned in fee simple and do the unit owners have sole ownership in the common areas and facilities? ☑ Yes   ☐ No

6) Are all the common amenities owned by the Homeowners Association or leased?
   ☑ Owned by HOA   ☐ Leased (Please attach copy of lease)

7) Are there any special assessments now planned, or have there been any in the past year? ☐ Yes*   ☑ No

   *If yes, describe the nature of the assessment and the cost per unit: _____

8) Project ☑ is ☐ is not a conversion. If the project is a conversion, the conversion was legally created on ___1972___. If legally created within the past three (3) years, attach a copy of the Engineer's Report and Survey.

9) Are any unit owners thirty (30) days or more delinquent in paying monthly Homeowner Association dues?
   ☑ Yes*   ☐ No

   *If yes, what percentage of the unit owners are thirty days or more past due? ____6____ %

10) What is the average monthly unit assessment/condo common charge fee? $ _____

11) Is there a professional Management Company?   ☑ Yes*   ☐ No

    *If yes, does the Management Agreement have a penalty provision or require more than a ninety (90) day cancellation notice?   ☐ Yes   ☑ No

Condo_PUD_Cert (08/1004 LBS)

*Exhibit 3 w/ 9/09 Signed Parkchester North Condo Questionnaire*
*Page 2-2*

Nov 25 2008 12:53PM    f    hester North Condo    (7    931-5314    p.2

12) Does any single entity (same individual, investor group, or corporation) currently own more than 10% of the total units in the project?  ☑ Yes *  ☐ No

*If yes, what percentage of the total units in the project do they own?  *Sponsor 40%*  %

13) Does the project include any multi-dwelling units that represent security for a single mortgage?
☑Yes*  ☐ No

*If yes, please give details: *Sponsor has changed their will - To Secure a 90,000,000 Loan to Low-Inc Tenni*

14) Does the project include any commercial property?  ☑Yes*  ☐ No

*If yes, please provide details including percentage of commercial property: *21 Retail Stores*

15) The Homeowners Association ☐ is ☑ is not involved in any current or pending litigation. If it is, explain in detail on a separate sheet and attach all supporting documentation.

16) In the event of a mortgage foreclosure (or the acceptance of a deed in lieu of foreclosure) does the Homeowners Association waive its right of first refusal with respect to any lease, sale, or transfer of a unit, or with respect to any sales or transfer by the mortgage holder or other party who acquired the unit in connection with the foreclosure or deed-in-lieu.  ☑ Yes  ☐ No

17) Project insurance information:
- Hazard insurance:  $_____      *Please contact*
  Does this equal 100% of the current      *Deepa Cook for this*
  replacement cost of the improvement?  ☐Yes ☐ No      *information at:*
- Liability per occurrence:  $_____      *248-205-2930*
- Fidelity Bond (Employee Dishonesty):  $_____      *or*
- Flood Insurance (if applicable):  $_____      *248-205-2909*
- Earthquake insurance (if applicable):  $_____      *Dawn N*

**Please attach a copy of the Master Insurance Policy including evidence of each type of insurance coverage along with a copy of the most recent Operating Budget.**

We appreciate the time you have taken to complete this form.

Sincerely,          *Please find attached*
          *the request form for the*
          *Master Insurance Policy*

Mid-Island Mortgage Corp.
900 Merchants Concourse
Westbury, NY 11590
516-683-0800 Ext      Fax: 516-832-8135

I, the undersigned, certify that to the best of my knowledge and belief, the information and statements contained on this form are true and accurate.

_____          *11/18/09*
Officer/Trustee Signature          Date

_____          *7/8-712-4601*
Title          Telephone Number

Exhibit 4 Federal Housing Administration Condo Lending
Guideline page 1 - 3



# CONDOMINIUM
# PROJECT APPROVAL
## *and*
# PROCESSING GUIDE

 June 30, 2011          

*Exhibit 4 Federal Housing Administration Condo Lending Guideline page 2-3*

- The exception terminates with the expiration of the current project approval.

## Live / Work Projects

Live/Work projects are traditional condominiums projects with legal documents that require or allow for non-residential use within the residential condominium unit. Live/work projects usually look and feel like traditional condominium projects and must meet the below requirements.

- Live / Work project approvals require approval under the HRAP option; **and**
- The condominium declaration must state that the work (non-residential) space per unit cannot exceed 25 percent of the unit's total floor area; **and**
- The non-residential work space may not exceed 25 percent of the project's total floor area; **and**
- The work non-residential use must be subordinate to the units' residential use and character.

### 2.1.4 Investor Ownership

**No more than 10 percent of the units may be owned by one investor / entity (single or multiple owner entities).** This limitation includes all rented and leased units that a developer/builder owns, including those units acquired during a project acquisition. For condominium projects with ten or fewer units, no single investor / entity may own more than one unit within the project. For all condominium projects with ten or more units, no single investor / entity may own more than 10 percent of the total number of units. All units, common elements, and facilities within the project must be 100 percent complete.

The investor / single entity individual owner-occupied unit is not considered investor owned and subject to the investor requirements stated above.

**Unoccupied and unsold units owned by a builder / developer are not considered as investor owned and subject to the investor requirements stated above.**

Eligible non-profit and / or eligible governmental housing programs are not subject to the 10 percent ownership interest limitation. An eligible governmental or nonprofit program means a program designed to assist the purchase of low-or moderate-income housing including rental housing that is operated pursuant to a program established by Federal law, operated by a State or local government, or operated by an *eligible nonprofit organization as defined by the Department's current guidelines. (* Refer to 24 CFR 203.41 for additional information.)

**Note:** Ownership interest cannot exceed 49 percent of the total units at the time

*A Exhibit 4 Federal Housing Administration Condo Lending Guideline page 3-3*

of project approval.

Units in projects that are subject to legally mandated rent regulations will not be subject to the investor requirements stated above.

### 2.1.5 Delinquent Homeowners Association (HOA) Dues

This requirement must be reviewed as part of the analysis for project approval and must also be verified as part of the loan level requirements. No more than 15 percent of the total units can be in arrears (more than 30 days past due) of their condominium association fee payments (does not include late fees or other administrative expenses). The 15 percent includes all units (occupied, investor, bank-owned, vacant).

Exception requests may be considered on a case-by-case basis by the jurisdictional HOC. No exception requests can be processed under the DELRAP option. FHA reserves the right to reject any exception request received. Requests may be considered as noted below. However, based on the HOC review, additional information and / or documentation may be required.

No more than 20 percent of the total units can be in arrears (more than 30 days past due) if FHA reviews the documentation at project approval and determines that tolerance of the higher percentage is warranted.

The following requirements must be met:

- The HOA provides a report for the past six months that reflects the history of unpaid assessments.
- The HOA current reserve fund balance and current operating results (documented HOA Balance Sheet and Income/Expense financial statements dated less than 90 days at the time of submission) evidences excess available funds in the amount of the outstanding arrearage.
- A review of the HOA financial statements and verification of the reserve account balance reveals that the HOA has sufficiently accounted for bad debt and arrearages.
- A current reserve study that is no greater than 24 months old supports the sufficiency of the current HOA assessments to meet the project component replacement needs.
- The HOA provides evidence of actions to collect the unpaid arrearages, including legal action, execution of payment plans, or other similar efforts.
- The exception terminates with the expiration of the current condominium project approval.

*A Exhibit 5-1   E Trade Payoff Statement*

**PAYOFF STATEMENT**

E*TRADE Servicing Center
PO Box 205
Waterloo IA 50704-0205

11/08/10

Loan No: 0354542595

Borrower:   EMANUEL DELVALLE

PO BOX 154

HACKESACK       NJ 07602

Property:
1503 METROPOLITAN AVENUE
APT. #7B
BRONX          NY
10463-0000

Statement Sent to Name: EMANUEL DELVALLE
Statement Sent to Fax Number: 000-000-0000

As of 11/08/10, the status of this loan is as follows:
Next Payment Due:
Matures:                              11/01/10
Escrow Balance:                       08/2035
                                       $22.01

Loan Type:            CONVENTIONAL
Note Rate:                3.50000%
Escrow Retained (**pg. 2):    $29.77
Mortgage Insurance:          $0.00

**\* \* \* THE FOLLOWING FIGURES ARE SUBJECT TO FINAL VERIFICATION BASED ON THE RECEIPT OF FUNDS BY E\*TRADE Servicing Center \* \* \***

| ITEMS | AMOUNT DUE |
|---|---|
| Principal | $85434.92 |
| Interest Calculated to but not including 11/19/10 | $396.65 |
| Escrow/Impound Funds Due | $7.76 |
| Late Charges Outstanding | $17.52 |
| Unapplied Funds | $0.00 |
| Statement Fee | $0.00 |
| Recording Fee | $42.00 |
| Reconveyance/Trust | $0.00 |
| Release Fee | $0.00 |
| Fax Fee | $0.00 |
| Other Fees and Costs | $1033.14 |
| Deferred Amount | $.00 |
| Prepayment Penalty Fee | $0.00 |
| Optional Products | $0.00 |
| Uncollected P&I | $.00 |
| **TOTAL DUE** | **$86931.99** |

Per Diem Interest

$8.1924

**\*\*Payoff funds must be remitted in US dollars by cashier's check, certified check or bank wire.\*\***

**\*\*\*YOU ARE RESPONSIBLE FOR COMPLIANCE OF THIS DOCUMENT\*\*\***

For Escrowed Loans:  We require written authorization from our borrower(s) to use any amount of escrow funds towards the payoff of the loan.  If you authorize E*TRADE Servicing Center to use escrow funds towards the payoff of the loan, please sign below and fax to 1-888-395-6626.

_____                    _____
Signature                                  Signature

*Exhibit 6 Estimated Parkchester North Condo Common
Changes Due Page 1-0

## Exhibit 6 11-2009 Estimated Parkchester North Condo Common Charges Due

| Date | Amount | The number of months between 3/08 to 10/08 | Monthly Common Charges | Number of Months between 10/08 to 11/09 | Total Common Charges Due |
|------|--------|---------------------------------------------|------------------------|------------------------------------------|--------------------------|
| 3/1/2008 | $4,579.34 | | | | |
| 10/1/2008 | $12,168.95 | Total comon charges due 10/08 | | | |
| | $7,589.61 | | 7  $1,084.23 | 12 | $13,010.76 |
| 11/1/2009 | $25,179.71 | Total Estimated comon charges payoff to Parkchester North Condo | | | |

This estimated Parkchester North Condo Common charge payoff is based on line 9 to 11 of the 11/2008
Verified Complaint mailed to the plaintiff.

*Exhibit b    Estimated Parkchester North Condo Common Charges Due pg 2-8*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

---------------------------------------------------------------

THE BOARD OF MANAGERS OF THE
PARKCHESTER NORTH CONDOMINIUM,
ON BEHALF OF THE UNIT OWNERS,

                     Plaintiff,

        -against-

EMANUEL DELVALLE, 7B LAND TRUST,
LEILA BRATHWAITE, "MERS" AS NOMINEE FOR
E*TRADE BANK, CNY PARKING
VIOLATIONS BUREAU, CNY ENVIRONMENTAL
CONTROL BOARD And the following persons or parties being either
tenants or occupants of the liened premises or
persons or parties having or claiming to have a right
title or interest in the liened premises herein being
sued fictitiously because their representative
names are presently unknown to the plaintiff,
i.e. John Doe "1" through John Doe "3"

                    Defendants

**VERIFIED
COMPLAINT**

Index No.

---------------------------------------------------------------

**SIRS/MESDAMES:**

    **PLEASE TAKE NOTICE,** that Plaintiff hereby complains of defendants by their attorneys, Doyle & Broumand, LLP, upon information and belief as follows:

    1.    Plaintiff is the Board of Managers of the Parkchester North Condominium (hereinafter referred to as "PNC"), which Condominium was duly organized and is exists pursuant to Article 9-B of the Real Property Law of the State of New York, with its principal office at 2000 East Tremont Avenue, Bronx, New York, and is comprised of sixteen apartment buildings and land declared a Condominium by Declaration dated December 7, 1972, and recorded in the Office of the Register of the City of New York,

*EXHIBIT b   Estimate Purchase Woman Claimed Common*
*Charges Due page 3 - 9*

County of the Bronx on December 11, 1972, in Reel 198 at Page 65 (hereinafter referred to as "Declaration").

2.    That this action falls within one or more of the exemptions set forth in CPLR 1602.

3.    Upon information and belief, at all relevant times, the defendant, EMANUEL DELVALLE, is the record owner of Unit 7B (hereinafter the "Unit"), at 1503 METROPOLITAN AVE, Bronx, New York 10462, who fraudulently transferred the premises to 7B LAND TRUST.

4.    The Unit Owner is the owner of a certain unit in the Condominium known as Unit number 7B in the building known as N-6, at 1503 METROPOLITAN AVE In the Borough and County of Bronx, City and State of New York (hereinafter referred to as "unit" or "premises"), which unit is more fully described in Schedule A annexed hereto and which form a part hereof, which unit was conveyed to said unit owner by deed recorded in the Office of the City Register of the City of New York, County of Bronx on AUGUST 30,1996 in Reel 1413 page 1103 then fraudulently transferred on July 7, 2008 to 7B LAND TRUST IN CRFN NO. 2008000288813.

5.    The Declaration establishing the Condominium at Paragraph 14 states:
   *14.    Units Subject to Declaration, By-Laws and Rules and Regulations.*
   All present and future owners, tenants, and occupants of units shall be subject to and shall comply with the provisions of this Declaration, the By-Laws and the Rules and Regulations, as they may be amended from time to time. The acceptance of a deed or conveyance or the entering into of a lease or the entering into occupancy of any unit shall constitute an agreement that the provisions of this Declaration, the By-Laws and the Rules and Regulations, as they may be amended from time to time, are accepted and ratified by such owner, tenant or occupant, and all of such provisions shall be deemed and taken to be covenants running with the land and shall bind any person having

REXhibit b     Estimate & Payment Novia consid Common
Charges Due page 4-8

at any time any interest or estate in such unit, as though such provisions were
recited and stipulated at length in each and every deed or conveyance or lease
thereof.

6.  Article V, Section 1 of the By-Laws of the Condominium provides as

follows:

The Board of Managers shall from time to time, and at least
Annually, prepare a budget for the Condominium, determine
the amount of the common charges payable by the unit owners to meet the
common expenses of the Condominium, and allocate and assess such
common charges, and expenses among the unit owners according to their
respective common interests…

7.  Article V, Sections 6 and 7 of the By-Laws of the Condominium, provide as

follows:

Section 6.    Default in Payment of Common Charges.  In the event of default
by any unit owner in paying to the Board of Managers the common charges
as determined by the Board of Managers such unit owner shall be obligated
to pay interest at the legal rate on such common charges from the due date
thereof, together with all expenses, including attorneys' fees, incurred by the
Board of Managers in any proceeding brought to collect such unpaid
common charges.  The Board of Managers shall have the right and duty to
attempt to recover such common charges, together with interest thereon, and
the expenses of the proceeding, including attorneys' fees, in an action to
recover the same brought against such unit owner, or by foreclosure of the
lien on such apartment unit ranted by Section 339-z of the Real Property Law
of the State of New York, in the manner provided in Section 339-aa thereof.

Section 7.    Foreclosure of Liens for Unpaid Common Charges.  In any
action brought by the Board of Managers to foreclose a lien on an apartment
unit because of unpaid common charges, the unit owner shall be required to
pay a reasonable rental for the use of his apartment unit and the plaintiff in
such foreclosure action shall be entitled to the appointment of a receiver to
recollect the same.  The Board of Managers, acting on behalf of all unit
owners, shall have power to purchase such apartment unit at the foreclosure
sale and to acquire, hold, lease, mortgage, vote the votes appurtenant to
convey or otherwise deal with the same.  A suit to recover a money judgment
for unpaid common charges shall be maintainable without foreclosing or
waiving the lien securing the same.

*Exhibit 6* *2nd image a Rev-Chg... Notre w/ad common*
*Changed Due page 5-9*

8. The unit owner failed to comply with the terms and conditions of said Declaration and By-Laws of the Condominium by failing and omitting to pay the said common charges.

9. That on or about March 28, 2008 Plaintiff duly filed a Notice of Lien for common charges in the sum of $4579.34 and was recorded in the Office of the City Register of the City of New York, County of Bronx under File No.(CRFN) 2008000125026.

10. Plaintiff's Lien, claimed as aforesaid, has not been paid, cancelled or discharged, and no other action or proceeding at law or in equity has been brought by plaintiff for the foreclosure thereof, or for the recovery of the monies thereby secured or any part thereof.

11. By virtue of the foregoing, the entire accrued unpaid common charges, being the balance of common charges for which said lien was filed together with the additional accrued total common charges, a total sum of $12,168.95 is due and owing to plaintiff with interest thereon from the date said common charges became due, which entire accrued unpaid common charges are secured by the lien as aforesaid, through OCTOBER 31, 2008.

12. That in order to protect its security, plaintiff may be compelled during the pendency of this action to pay real estate taxes, water, sewer charges, assessments, insurance premiums, interest and installments on prior mortgages, and other charges affecting the said unit, and plaintiff requests that any sum so paid by it should be added to

the sum otherwise due and be deemed secured by the Lien for common charges and be adjudged to be an additional lien on the said unit.

13.     Defendant(s), LEILA BRATHWAITE, "MERS" AS NOMINEE FOR E*TRADE BANK, CNY PARKING VIOLATIONS BUREAU, CNY ENVIRONMENTAL CONTROL BOARD.,are made party defendants because they have or claim to have some interest or lien upon the unit or some part thereof for in particular for mortgages, unpaid liens issued to the unit owner or a former unit owner, in particular due judgments issued against the unit owner or persons with the same name as the unit owner. If the Defendant has a superior instrument, then they are named as a Defendant for notice purposes

14.     Defendants, John Doe "1" through John Doe "3" are made party defendants because they have or claim to have some interest or lien upon the unit or some part thereof for unpaid liens issued to the unit owner or a former unit owner.

15.     Pursuant to the Declaration establishing the plan for ownership of units within the Condominium (which Declaration was recorded on December 11, 1972 in the Office of the Register of the City of New York, County of Bronx, at Reel 198 of Conveyances, at page 65) and Sections 339-u and 339-j of the Real Property Law Of the State of New York, the operation of the Condominium is governed by its by-laws.

16.     The unit owner did agree upon the purchase of this Unit to comply with and abide by the Declaration, by-laws and rules and regulations of the Condominium.

17.     As a result of the unit owner's failure to comply with the Declaration and the by-laws it is believed that the Plaintiff will expend upwards of Five Thousand

A Exhibit to Estimated Purchaster North Condo common
Charge Due  page 7 - 8

($5,000.00) Dollars in attorneys fees alone, and that the unit owner is responsible for all

legal fees and costs involved in this action.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

That the defendants and all persons claiming under them, or any of them subsequent

to the filing of a Notice of Pendency of this action in the Office of the Clerk of the County

of Bronx, be barred and foreclosed of all right, title, claim, lien and equity of redemption

of the said unit and each and every part thereof; that the said unit may be decreed to be

sold in one parcel according to law subject to zoning ordinances, restrictions and

regulations imposed by any governmental authority; the Declaration, By-Laws and Rules

and Regulations of the Condominium, and all amendments, thereto; all covenants,

restrictions, easements, rights, agreements, reservations of record, if any, affecting said

premises; to any state of facts an accurate survey would show; and to any occupants of the

premises whose interests have been foreclosed pursuant to the within action; that the

amount due plaintiff for the accrued and unpaid common charges as set forth herein and

such additional common charges through the judgment and sale hereunder, be adjudged,

and that from the money arising from the sale, plaintiff be paid the amount due it on said

accrued unpaid common charges with interest to the time of such payment, the expenses

of the sale, the costs and expenses of this action and reasonable attorneys' fees, together

with any sum which may be paid by plaintiff for real estate taxes, water, sewer charges,

assessments, insurance premiums, interest and installments on prior mortgages, if there be

any, and any other charges affecting the said unit, with appropriate interest thereon so far

as such monies properly applicable thereto will pay the same;  that a Receiver may be

A Exhibit 6 Estimates of purchase & Common
Charges Due page 8-9

appointed to take possession of the said unit; and to lease the same or any part thereof,

with such powers as may be necessary who, after deducting all proper charges and

expenses shall apply the residue of said rents and profits to the payment and satisfaction

of the amount of plaintiff's lien or to any deficiency which may exist after applying the

proceeds of the said sale of said unit to the payment of the amounts due, including

interest, costs, expenses of said sale and reasonable attorneys' fees; that the unit owner be

adjudged to pay any deficiency which remains; and that plaintiff have such other and

further relief as may be just and appropriate in the premises, together with the costs and

disbursements of this action.

DATED:     BRONX, NEW YORK
           OCTOBER 28, 2008

Yours, etc.

HEIDI BROUMAND, ESQ.
DOYLE & BROUMAND, LLP
Attorneys for Plaintiff
3152 Albany Crescent
Bronx, New York 10463
(718) 796-2210

*Exhibit#A 6/12/12 Adam Plotch Common charge Purchase*

*Jewett Abstract Corp.*

Title No. 14846R
File No.

Effective Date: 06/12/12
Redated:

PROPOSED INSURED:

Purchaser:     ADAM PLOTCH AND
               CITY WEST CAPITAL, LLC

Mortgagee:

AMOUNT OF INSURANCE:

Fee:          $ 55,500.00     (Insurance $130,000.00)
Mortgage:     $
Leasehold:

Premises described in Schedule "A" is known as:

Address: 1503 METROPLOITAN AVENUE, UNIT 7B, BRONX, NEW YORK

County: Bronx     City: New York     Village:     Town:

District          Section:          Block: 3944     Lot(s): 2558

*Exhibit B Defendant 1 Lien on common charges page 1*

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2011030100377001001E1690

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| **Document ID:** 2011030100377001 | Document Date: 02-15-2011 | Preparation Date: 03-01-2011 |
| Document Type: DEED | | |
| Document Page Count: 3 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| JEWETT ABSTRACT (13949A) | JEWETT ABSTRACT CORP |
| REDVISION (DH) | 706 FOREST AVENUE |
| 16 COURT STREET, STE 714 (P/U RV) | STATEN ISLAND, NY 10310 |
| BROOKLYN, NY 11241 | PICK UP REDVISION |
| 999-999-9999 | |
| danet.huckamchand@redvision.com | |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 3937 | 2076 Entire Lot | 11D | 81 METROPOLITAN OVAL |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year____ Reel___ Page _____ or File Number_____

### PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| DENNIS E. KROLIAN, AS REFEREE | ADAM PLOTCH |
| 21 EARLWOODE DRIVE | 95 WEST 95TH STREET |
| WHITE PLAINS, NY 10606 | NEW YORK, NY 10025 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 905.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 114.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | RECORDED OR FILED IN THE OFFICE | |
| MTA: | $ | 0.00 | OF THE CITY REGISTER OF THE | |
| NYCTA: | $ | 0.00 | CITY OF NEW YORK | |
| Additional MRT: | $ | 0.00 | Recorded/Filed     03-03-2011 10:04 | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 52.00 | **2011000077802** | |
| Affidavit Fee: | $ | 0.00 | | |

*City Register Official Signature*

*Exhibit 1th Destendant of Lien for common charges page of*

## REFEREE'S DEED IN FORECLOSURE

THIS DEED, made February ___, 2011, between

DENNIS E. KROLIAN, ESQ., 21 Earlwoode Drive, White Plains, New York 10606 as Referee duly appointed in an action hereinafter mentioned, GRANTOR, and

ADAM PLOTCH, with principal place of business at 95 West 95th Street, New York, NY 10025, GRANTEE.

### W I T N E S S E T H :

That GRANTOR, the Referee appointed in an action in the Supreme Court of the State of New York, county of Bronx, Index No. 380028/08 entitled "THE PARKCHESTER SOUTH CONDOMINIUM, INC., on behalf of its unit owners of the Parkchester South Condominium, Plaintiff, against, ELIZABETH R. BYCHKOV, residing at 57 West 58th Street, #8G, New York, New York, 10019; Rich Bychov, 81 Metropolitan Oval, #11D, Bronx, New York 10462; and Household Finance Realty Corp., of New York, with offices at 1633 Broadway, New York, New York 10019, Defendants," foreclosing a Lien for common charges recorded on August 1, 2007 in the Office of the City Register, Bronx County as CRFN# 2007000395539, and in pursuance of a Judgment entered at a I. A. Part 4 of the Supreme Court of the State of New York, County of Bronx on April 7, 2010, and in consideration of twenty eight thousand one hundred 00/100 ($28,100.00) dollars, being the highest sum bid at the Sale conducted under said Judgment, does hereby grant and convey to the GRANTEE,

*Being the same premises as in CRFN 2005000712412*

THE USE FOR WHICH THE PREMISES IS INTENDED IS THAT OF A RESIDENCE ONLY AS PERMITTED BY THE BY-LAWS OF THE PARKCHESTER SOUTH CONDOMINIUM AND APPLICABLE LAW.

*Exhibit 13 Notement of Lien for Common Charges    page 3*

Jewett Abstract Corp.

Title No. 13949A
File No.

### SCHEDULE A

The Unit known as Unit 11D (hereinafter called "the Unit") in the Building known as 140 and by the street number 81 Metropolitan Oval, in the Borough and County of the Bronx, City and State of New York, designated and described as Apartment Unit No. 11D in the Declaration establishing the PARKCHESTER SOUTH CONDOMINIUM (hereinafter called the "Property"), made by the Grantor under the Condominium Act of the State of New York (Article 9-B of the Real Property Law of the State of New York), dated November, 1985, and recorded in the Office of the City Register, Bronx County, on the 19th day of March, 1986, in Reel 638 Page 1496 (hereinafter called the "Declaration") and designated as Tax Lot 2076 in Block 3937 of Section 15 of the Borough of the Bronx on the Tax Map of the Real Property Assessment Department of the City of New York and on the floor plans and site plan (the "Floor Plans"), certified by Hurley & Fannella, Architects, filed in said Register's Office as Condominium Plan No. 23.

Together with an undivided .0106 % interest appurtenant to the Unit in the Common Elements of the Property (hereinafter called the "Common Elements").

SAID PREMISES BEING MORE COMMONLY KNOWN AS 81 METROPOLITAN OVAL, BRONX, NEW YORK

*For Conveyancing Only*
*Together with all rights title and interest of, in, and to any streets and roads abutting the above described premises.*

Our policies of title insurance include such buildings and improvements thereon which by law constitute real property, unless specifically excepted therein. Now is the time to determine whether we have examined all of the property and easements you desire to be insured. If there are appurtenant easements to be insured, please request such insurance. In some cases, our rate manual provides for an additional charge for such insurance.

NYSLTA CERTIFICATE OF TITLE-SCHEDULE A

*Exhibit #B Defendant's Lien for Common Charges   page 4*

**SUBJECT TO:**

1. Zoning ordinances, restrictions and regulations imposed by any governmental authority;
2. The Declaration, By-Laws and Rules and Regulations of the Parkchester South Condominium and all amendments thereto;
3. All covenants, restrictions, easements, rights, agreements, reservations of record, if any, affecting the premises;
4. Any state of facts an accurate survey would show;
5. A mortgage now a lien of record owed to Mortgage Electronic Registration Systems, Inc., as Nominee for America's Wholesale Lender, in the original principal balance of $62,400.00, and accrued interest; and
6. Occupants of the premises whose interests have been foreclosed by the foreclosure action referred to herein.

TO HAVE AND TO HOLD the premises whose herein granted unto the GRANTEE, its heirs and assigns forever.

IN WITNESS WHEREOF, The GRANTOR has hereunto set his hand and seal the date first above written.

DENNIS E. KROLIAN, ESQ. Referee

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF ~~BRONX~~ )
         WESTCHESTER

On February /5, 2011, before me, the undersigned, a Notary Public in and for said State, personally appeared DENNIS E. KROLIAN, ESQ., personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public-State of New York

BRETT P. HERMAN
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02HE5022950
QUALIFIED IN KINGS COUNTY
COMMISSION EXPIRES *July 3, 2014*

*13949A Plotch*
*Block 3937*
*Lot 2076*

SEAL

SEAL

*Exhibit B   Defendant's lien for common charges page 3*

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | 2016020802691001003E6C28 |

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| Document ID: 2016020802691001<br>Document Type: DEED<br>Document Page Count: 3 | Document Date: 01-15-2016 | Preparation Date: 02-10-2016 |

| PRESENTER: | RETURN TO: |
|---|---|
| ROY, MONDELLO, LAROCCA & RISOTTO<br>828 SOUTH BROADWAY<br>SUITE 100<br>TARRYTOWN, NY 10591<br>914-591-7722<br>RRLAROCCA@RMLRLAW.COM | ROY, MONDELLO, LAROCCA & RISOTTO<br>828 SOUTH BROADWAY<br>SUITE 100<br>TARRYTOWN, NY 10591<br>914-591-7722<br>RRLAROCCA@RMLRLAW.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 3944 | 4412 | Entire Lot  2B | 1527 METROPOLITAN AVENUE |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN_____   or   DocumentID_____   or   _____ Year_____ Reel_____ Page_____   or   File Number_____

### PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| MICHAEL HAROLD MAIZES, ESQ. AS REFEREE<br>2027 WILLIAMSBRIDGE ROAD<br>BRONX, NY 10461 | ADAM PLOTCH<br>95 WEST 95TH STREET #29E<br>NEW YORK, NY 10025 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 771.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 98.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 52.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed       02-22-2016 10:52
City Register File No.(CRFN):
2016000057519

*Annette M Hill*

*City Register Official Signature*

*Exhibit B Defendant 7 Lien for Common Charges page 6*

### REFEREE'S DEED IN FORECLOSURE

THIS DEED, made January 15th, 2016, between

MICHAEL HAROLD MAIZES, ESQ., 2027 Williamsbridge Road, Bronx, New York 10461, as Referee duly appointed in an action hereinafter mentioned, GRANTOR, and

ADAM PLOTCH, with principal place of business at 95 West 95th Street, #29E, New York, New York 10025, GRANTEE.

## W I T N E S S E T H :

That GRANTOR, the Referee appointed in an action in the Supreme Court of the State of New York, county of Bronx, Index No. 381335/12 entitled "BOARD OF MANAGERS OF THE PARKCHESTER NORTH CONDOMINIUM, on behalf of its unit owners of the Parkchester North Condominium, Plaintiff, against, WILLIAM A. GOMEZ-DOMINGUEZ A/K/A WILLIAM A. GOMEZ, at 1527 Metropolitan Avenue, #2B, Bronx, NY 10462; City of New York Environmental Control Board at 66 John Street, 10th Floor, NY, 10007; City of New York Parking Violations Bureau at 100 Church Street, New York, NY 10007; New York State Department of Taxation and Finance at 120 Broadway, 24th Floor, New York, NY 10005; Child Support Enforcement Section at Building 9 W.A. Harriman Campus, Albany, NY 12227; New York City Transit Authority, Transit Adjudication Bureau at 130 Livingston Street, Brooklyn, NY 11201; Lincoln Hospital at 244 East 149th Street, Room 713, Bronx, NY 10451; Bank of America, N.A. at 335 Madison Avenue, New York, NY 10017; Yisell Gomez at 1527 Metropolitan Avenue, #2B, Bronx, NY 10462 Defendants," foreclosing a Lien for common charges recorded on November 9, 2012 in the Office of the City Register, Bronx County in Reel 2012000442143, and in pursuance of a Judgment entered at a I. A. Part 7 of the Supreme Court of the State of New York, County of Bronx on October 2, 2015, and in consideration of twenty four thousand one hundred ($24,100.00) dollars, being the highest sum bid at the Sale conducted under said Judgment, does hereby grant and convey to the GRANTEE, 

Exhibit 115 Defendant's Lien for common change page 7

## SCHEDULE A

### DESCRIPTION OF PREMISES

The Unit known as apartment No. 2-B (hereinafter called "the Unit") in the Building known as number N-15 a/k/a 136 and by the street number 1527 METROPOLITAN AVENUE, in the Borough and County of the Bronx, the City and State of New York, designated and described as Apartment Unit No. 2-B in the Declaration establishing The Parkchester North Condominium (hereinafter called the "Property"), made by the Parkchester Apts. Co. under the Condominium Act of the State of New York (Article 9-B of the Real Property Law of the State of New York), dated December 7, 1972, recorded in the Office of the Register of the City of New York, in the County of The Bronx, on the 10th day of February, 1972, in Reel 198 at Page 65, as amended by First Amendment to Declaration of Condominium recorded in said Register's Office on the 22nd day of July, 2003, under CRFN NO. 2003000246075 (hereinafter called the "Declaration"), and designated also as SECTION 15 BLOCK 3944 LOT(S) 4412, of the Borough of The Bronx on the Tax Map of the Real Property Assessment Department of the City of New York, on the floor plans and site plan ("the Floor Plans"), certified by Edward J. Hurley, Architect, filed in the said Register's Office as Condominium Plan No. 2. The land on which the Building containing the Unit is located (an on which other buildings forming part of The Parkchester North Condominium are located) is described on Exhibit A attached hereto and made part hereof.

TOGETHER with an undivided .0207 percent interest appurtenant to the Unit in the common elements of the Property (hereinafter called the "common elements");

### FOR COMPLETE DESCRIPTION - SEE ORIGINAL DOCUMENTS

*Exhibit 15 Defendant 2 Lien for common charges page 8*

SUBJECT TO:

    1.  Zoning ordinances, restrictions and regulations imposed by any governmental authority;

    2.  The Declaration, By-Laws and Rules and Regulations of the Parkchester North Condominium and all amendments thereto;

    3.  All covenants, restrictions, easements, rights, agreements, reservations of record, if any, affecting the premises;

    4.  Any state of facts an accurate survey would show;

    5.  A mortgage now a lien of record owed to M&T Bank, in the original principal sum of $53,000.00, and accrued interest; and

    6.  Occupants of the premises whose interests have been foreclosed by the foreclosure action referred to herein.

    TO HAVE AND TO HOLD the premises whose herein granted unto the GRANTEE, its heirs and assigns forever.

    IN WITNESS WHEREOF, The GRANTOR has hereunto set his hand and seal the date first above written.

                                       MICHAEL HAROLD MAIZES, ESQ., Referee

STATE OF NEW YORK    )
                      ) ss.:
COUNTY OF BRONX    )

    On January 15, 2016, before me, the undersigned, a Notary Public in and for said State, personally appeared MICHAEL HAROLD MAIZES, ESQ., personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                                     Notary Public-State of New York

LAUREEN RAMOS
Notary Public, State of New York
No. 01RA6061005
Qualified in Bronx County
Commission Expires 12-5-19

SEAL

*Exhibit #13 Defendant of Lien for common Charges page 9*



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2012020800789001001E863D

## RECORDING AND ENDORSEMENT COVER PAGE    PAGE 1 OF 4

| | |
|---|---|
| Document ID: 2012020800789001 | |
| Document Type: DEED | Document Date: 12-02-2011 |
| Document Page Count: 3 | Preparation Date: 02-08-2012 |

**PRESENTER:**
JEWETT ABSTRACT CORP. 14277R
REDVISION (DH)
16 COURT STREET, STE 714 (P/U RV)
BROOKLYN, NY 11241
999-999-9999
danet.huckamchand@redvision.com

**RETURN TO:**
JEWETT ABSTRACT CORP.
706 FOREST AVENUE
STATEN ISLAND, NY 10310

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 3944 | 3949 Entire Lot | 1G | 1591 METROPOLITAN AVENUE |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year_____ Reel _____ Page _____ or File Number _____

### PARTIES

**GRANTOR/SELLER:**
MARTIN MOHR, AS REFEREE
901 SHERIDAN AVENUE
BRONX, NY 10451

**GRANTEE/BUYER:**
ADAM PLOTCH
95 WEST 95TH STREET
NEW YORK, NY 10025

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 905.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 202.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 52.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed       02-14-2012 16:04
City Register File No.(CRFN):
                        2012000061529

*Qnnettt M Hill*

***City Register Official Signature***

Exhibit 7B Defendant 7 Lien for common charges   page 10

## REFEREE'S DEED IN FORECLOSURE

THIS DEED, made December 2, 2011, between

MARTIN MOHR, ESQ., 901 Sheridan Avenue, Bronx, New York, as Referee duly appointed in an action hereinafter mentioned, GRANTOR, and

ADAM PLOTCH, with principal place of business at 95 West 95th Street, New York, New York, GRANTEE.

W I T N E S S E T H :

That GRANTOR, the Referee appointed in an action in the Supreme Court of the State of New York, county of Bronx, Index No. 380741/09 entitled "BOARD OF MANAGERS OF THE PARKCHESTER NORTH CONDOMINIUM, on behalf of its unit owners of the Parkchester North Condominium, Plaintiff, against, DESMOND ASKA, WANDA ASKA, MYRNA WRIGHT, Ms. Aska, #1G, 1591 Metropolitan Avenue, Bronx, NY 10462; Commissioner of the NYC Department of Social Services, as Assignee of Christine A. Thorpe, with offices at 100 Church Street, New York, New York; and New York State Department of Taxation and Finance with offices at 120 Broadway, 24th Floor, New York, New York, Defendants," foreclosing a Lien for common charges recorded on March 31, 2009 in the Office of the City Register, Bronx County as CRFN# 2009000093371, and in pursuance of a Judgment entered at a I. A. Part 5 of the Supreme Court of the State of New York, County of Bronx on August 4, 2011; and in consideration of fifty thousand five hundred 00/100 ($50,500.00) dollars, being the highest sum bid at the Sale conducted under said Judgment, does hereby grant and convey to the GRANTEE,

Exhibit 7B Defendant 7 Lien for Common charges page 41

*Jewett Abstract Corp.*

Title No. 14277R

### SCHEDULE A

ALL that certain plot, piece or parcel of land, with the buildings and improvements therein contained, situate and being a Condominium Unit in the Borough and County of The Bronx, City and State of New York, known and designated as the **Unit known as apartment No. 1G** (hereinafter called the "Unit") in the Building known as No. 128 and by the street No. 1591 Metropolitan Avenue, in the Borough and County of The Bronx, City and State of New York, designated and described as apartment No. 1G in the Declaration establishing **THE PARKCHESTER NORTH CONDOMINIUM** (hereinafter called the "Property") made by the Grantor under the Condominium Act of the State of New York (Article 9-B of the Real Property Law of the State of New York), dated December 7, 1972 and recorded in the Office of the City Register, Bronx County (the "Register's Office") on the 11th day of December, 1972 in Reel 198 at Page 65 (hereinafter called the "Declaration") and also designated as Tax Lot 3949 in Block 3944 of Section 15 of the Borough of The Bronx on the Tax Map of the Real Property Assessment Department of the City of New York, and on the Floor Plan and site plan ("the Floor Plans") certified by Edward J. Hurley, Architect, on the 10th day of February, 1972 and filed in the Office of the City Register, Bronx County on the 11th day of December, 1972 as Condominium Plan No. 2.

**TOGETHER with an undivided 0.0347% interest in the Common Elements** for the Unit in the Common Elements of the Property (hereinafter called the "Common Elements").

THE USE FOR WHICH THE PREMISES IS INTENDED IS FOR RESIDENTIAL PURPOSES ONLY AS PROVIDED UNDER THE BY LAWS OF THE PARKCHESTER NORTH CONDOMINIUM AND APPLICABLE LAW.

SAID PREMISES BEING MORE COMMONLY KNOWN AS 1591 METROPLOITAN AVENUE, UNIT 1G, BRONX, NEW YORK

*For Conveyancing Only*
*Together with all rights title and interest of, in, and to any streets and roads abutting the above described premises.*

Our policies of title insurance include such buildings and improvements thereon which by law constitute real property, unless specifically excepted therein. Now is the time to determine whether we have examined all of the property and easements you desire to be insured. If there are appurtenant easements to be insured, please request such insurance. In some cases, our rate manual provides for an additional charge for such insurance.

NYSLTA CERTIFICATE OF TITLE-SCHEDULE A

*Exhibit #B Defendant 2 Lien For Common charges page 12*

SUBJECT TO:

    1.  Zoning ordinances, restrictions and regulations imposed by any governmental authority;

    2.  The Declaration, By-Laws and Rules and Regulations of the Parkchester North Condominium and all amendments thereto;

    3.  All covenants, restrictions, easements, rights, agreements, reservations of record, if any, affecting the premises;

    4.  Any state of facts an accurate survey would show;

    5.  A mortgage now a lien of record owed to Homeside Lending, Inc., in the original principal sum of $40,000.00, and accrued interest; and

    6.  Occupants of the premises whose interests have been foreclosed by the foreclosure action referred to herein.

    TO HAVE AND TO HOLD the premises whose herein granted unto the GRANTEE, its heirs and assigns forever.

    IN WITNESS WHEREOF, The GRANTOR has hereunto set his hand and seal the date first above written.

        MARTIN MOHR, ESQ., Referee

STATE OF NEW YORK  )
                 ) ss.:
COUNTY OF BRONX    )

    On December ⊖, 2011, before me, the undersigned, a Notary Public in and for said State, personally appeared MARTIN MOHR, ESQ., personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

        Notary Public-State of New York

BRETT P. HERMAN
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02HE6123950
QUALIFIED IN BRONX COUNTY
COMMISSION EXPIRES

SEAL

Exhibit 7B Defendant 2 Lien for common charges page 1s



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2011062900128001001E4597

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| **Document ID:** 2011062900128001 | Document Date: 06-13-2011 | Preparation Date: 06-29-2011 |
| Document Type: DEED | | |
| Document Page Count: 3 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| JEWETT ABSTRACT CORP | ADAM PLOTCH |
| REDVISION (DH) (14079A) | 95 WEST 95TH STREET |
| 16 COURT STREET, STE 714 (P/U RV) | NEW YORK, NY 10470 |
| BROOKLYN, NY 11241 | |
| 999-999-9999 | |
| danet.huckamchand@redvision.com | |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 3944 | 3591 Entire Lot | MB | 1601 METROPOLITAN AVENUE |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

CRFN_____ or Document ID_____ or _____ Year_____ Reel ___ Page_____ or File Number_____

**PARTIES**

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| JOSEPH JEDNAK, AS REFEREE | ADAM PLOTCH |
| 4234 VIERO AVENUE | 95 WEST 95TH STREET |
| BRONX, NY 10470 | NEW YORK, NY 10025 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 610.08 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 156.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 52.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    07-08-2011 14:43
City Register File No.(CRFN):
2011000240968

*City Register Official Signature*

Exhibit 7B Defendants Lien For Common charges page-14

REFEREE'S DEED IN FORECLOSURE

THIS DEED, made June 13, 2011, between

JOSEPH JEDNAK, ESQ., 4234 Viero Avenue, Bronx, New York 10470, as Referee duly appointed in an action hereinafter mentioned, GRANTOR, and

ADAM PLOTCH, with principal place of business at 95 West 95th Street, New York, New York 10025, GRANTEE.

W I T N E S S E T H :

That GRANTOR, the Referee appointed in an action in the Supreme Court of the State of New York, county of Bronx, Index No. 381218/08 entitled "BOARD OF MANAGERS OF THE PARKCHESTER NORTH CONDOMINIUM, on behalf of its unit owners of the Parkchester North Condominium, Plaintiff, against, ANGELA FIGUEROA, at 1601 Metropolitan Avenue, #MB, Bronx, NY 10462; Municipal Credit Union at 22 Cortlandt Street, New York, New York 10007; Palisades Collection LLC at 210 Sylvan Avenue, Englewood Cliffs, NJ 07632; City of New York Parking Violations Bureau at 100 Church Street, New York, New York 10007; City of New York Transit Adjudication Bureau at 130 Livingston Street, Brooklyn, NY 11201, Defendants," foreclosing a Lien for common charges recorded on February 26, 2008 in the Office of the City Register, Bronx County as CRFN# 2008000078714, and in pursuance of a Judgment entered at a I. A. Part 8 of the Supreme Court of the State of New York, County of Bronx on June 18, 2010, and in consideration of thirty-nine thousand ($39,000.00) 00/100 dollars, being the highest sum bid at the Sale conducted under said Judgment, does hereby grant and convey to the GRANTEE,

The use for which the premises is intended is for residential purposes only as permitted under the By-laws of the Parkchester North Condominium and applicable law.

Exhibit 7 B Defendant 7 lien For common charges page 15

*Jewett Abstract Corp.*

Title No. 14079A

SCHEDULE A

ALL that certain plot, piece or parcel of land, with the buildings and improvements therein contained, situate and being a Condominium Unit in the Borough and County of The Bronx, City and State of New York, known and designated as the **Unit known as apartment No. MB** (hereinafter called the "Unit") in the Building known as No. N-12 and by the street No. 1601 Metropolitan Avenue, in the Borough and County of The Bronx, City and State of New York, designated and described as apartment No. MB in the Declaration establishing **THE PARKCHESTER NORTH CONDOMINIUM** (hereinafter called the "Property") made by the Grantor under the Condominium Act of the State of New York (Article 9-B of the Real Property Law of the State of New York), dated December 7, 1972 and recorded in the Office of the City Register, Bronx County (the "Register's Office") on the 11th day of December, 1972 in Reel 198 at Page 65 (hereinafter called the "Declaration") and also desifnated as Tax Lot 3591 in Block 3944 of Section 15 of the Borough of The Bronx on the Tax Map of the Real Property Assessment Department of the City of New York, and on the Floor Plan and site plan ("the Floor Plans") certified by Edward J. Hurley, Architect, on the 10th day of February, 1972 and filed in the Office of the City Register, Bronx County on the 11th day of December, 1972 as Condominium Plan No. 2.

**TOGETHER with an undivided 0.0200% interest in the Common Elements** for the Unit in the Common Elements of the Property (hereinafter called the "Common Elements").

SAID PREMISES BEING MORE COMMONLY KNOWN AS 1601 METROPLOITAN AVENUE, UNIT MB, BRONX, NEW YORK

*For Conveyancing Only*
*Together with all rights title and interest of, in, and to any streets and roads abutting the above described premises.*

Our policies of title insurance include such buildings and improvements thereon which by law constitute real property, unless specifically excepted therein. Now is the time to determine whether we have examined all of the property and easements you desire to be insured. If there are appurtenant easements to be insured, please request such insurance. In some cases, our rate manual provides for an additional charge for such insurance.

NYSLTA CERTIFICATE OF TITLE-SCHEDULE A

*Exhibit 7B Defendant 7 Lien for Common Charges Page 18*

SUBJECT TO:

    1.  Zoning ordinances, restrictions and regulations imposed by any governmental authority;
    2.  The Declaration, By-Laws and Rules and Regulations of the Parkchester North Condominium and all amendments thereto;
    3.  All covenants, restrictions, easements, rights, agreements, reservations of record, if any, affecting the premises;
    4.  Any state of facts an accurate survey would show;
    5.  A mortgage now a lien of record owed to Wells Fargo Bank, N.A., in the original principal sum of $39,500.00, and accrued interest; and
    6.  Occupants of the premises whose interests have been foreclosed by the foreclosure action referred to herein.
    TO HAVE AND TO HOLD the premises whose herein granted unto the GRANTEE, its heirs and assigns forever.
    IN WITNESS WHEREOF, The GRANTOR has hereunto set his hand and seal the date first above written.

*[signature]*
JOSEPH JEDNAK, ESQ., Referee

STATE OF NEW YORK   )
                  ) ss.:
COUNTY OF BRONX     )

    On June 3, 2011, before me, the undersigned, a Notary Public in and for said State, personally appeared JOSEPH JEDNAK, ESQ., personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

*[signature]*
Notary Public-State of New York

SEAL

BRETT P. HERMAN
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02HE5022950
QUALIFIED IN KINGS COUNTY
COMMISSION EXPIRES *March 3 2014*

*1407A Ploteh*
*Block 3944*
*Lot 3591*

Exhibit 7B Defendant's Lien For Common Charges page 17

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | 2017090100299002001E9921 |

### RECORDING AND ENDORSEMENT COVER PAGE          PAGE 1 OF 3

| Document ID: 2017090100299002 | Document Date: 08-28-2017 | Preparation Date: 09-01-2017 |
|---|---|---|
| Document Type: LIEN OF COMMON CHARGES | | |
| Document Page Count: 2 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| ROY, MONDELLO, LAROCCA & RISOTTO 505 WHITE PLAINS ROAD SUITE 113 TARRYTOWN, NY 10591 914-591-7722 RRLAROCCA@RMLRLAW.COM | ROY, MONDELLO, LAROCCA & RISOTTO 505 WHITE PLAINS ROAD SUITE 113 TARRYTOWN, NY 10591 914-591-7722 RRLAROCCA@RMLRLAW.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 3944 | 3712  Entire Lot | 3C | 1651 METROPOLITAN AVENUE |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN_____ or  DocumentID_____ or _____ Year____ Reel____ Page____ or File Number_____

### PARTIES

| PARTY ONE/DEBTOR: | PARTY TWO/SECURED PA: |
|---|---|
| ADAM PLOTCH 1651 METROPOLITAN AVENUE #3C BRONX, NY 10462 | BOARD OF MANAGERS OF PARKCHESTER NORTH CONDOMINIUM 1970 EAST TREMONT AVENUE BRONX, NY 10462 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $                0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $                0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $                0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | RECORDED OR FILED IN THE OFFICE | |
| MTA: | $ | 0.00 | OF THE CITY REGISTER OF THE | |
| NYCTA: | $ | 0.00 | CITY OF NEW YORK | |
| Additional MRT: | $ | 0.00 | Recorded/Filed        09-06-2017 10:49 | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 47.00 | 2017000330886 | |
| Affidavit Fee: | $ | 0.00 | | |

*Jennette M. Hill*

*City Register Official Signature*

Exhibit F Defendant's Lien For common charges page 1

## NOTICE OF LIEN FOR COMMON CHARGES

PLEASE TAKE NOTICE, that a Lien for Common Charges is hereby claimed by THE BOARD OF MANAGERS OF THE PARKCHESTER NORTH CONDOMINIUM, with offices at 1970 East Tremont Avenue, Bronx, New York, on behalf of the unit owners of the Parkchester North Condominium, against the unit known as Apartment No. 3C (hereinafter called "the unit"), in the Building known as No. N-12 a/k/a 123, and by the Street No. 1651 Metropolitan Avenue, in the Borough and County of the Bronx, City and State of New York, designated and described as Unit No. 3C in the Declaration establishing the Parkchester North Condominium (hereinafter called "the Property"), made by Parkchester Apts. Co., under the Condominium Act of the State of New York (Article 9-B of the Real Property Law of the State of New York), recorded in the Office of the Registrar in the City of New York, in the County of the Bronx, on the 11th day of December, 1972, in Reel 198, at page 65 (herein after called "the Declaration") and designated as Tax Lot No. 3712, in Blocks No. 3944 and 3962, of the Borough of the Bronx, on the Tax Map of the Real Property Assessment Department of the City of New York. The land on which the building containing the Unit is located (and on which the other buildings forming part of the Parkchester North Condominium are located) is described on Schedule A, annexed hereto and made a part hereof.

Upon information and belief, the name(s) of the record owner(s) is/are:
**ADAM PLOTCH**

The amount due under the said lien is $21,227.84 for common charges of said Condominium Unit which became due and payable for the period through and including 8/31/2017, pursuant to the By-Laws of the said Parkchester North Condominium.

**MICHAEL TORRES, being duly sworn, deposes and says:**

That deponent is General Manager and duly designated Agent of the Board of Managers of the Parkchester North Condominium, having an office located at 1970 East Tremont Avenue, Bronx, New York 10462. The deponent has read the foregoing Notice of Lien and knows the contents thereof and that the same is true to deponent's own knowledge, except as to the matters therein stated to be upon information and belief, and to those matters deponent believes them to be true. This acknowledgment is made by deponent because The Board of Managers of the Parkchester North Condominium is a Condominium Board and your deponent is the General Manager and duly designated agent of the Board of Managers of said Condominium. The grounds of your deponent's belief as to all matters not stated upon deponent's knowledge are records and accounts maintained by the Condominium.

Board of Managers of the
Parkchester North Condominium
by:

Dated: August 28, 2017

MICHAEL TORRES, General Manager

STATE OF NEW YORK )
                   ) ss.:
COUNTY OF BRONX    )

On the 28th day of August in the year 2017, before me the undersigned Notary Public in and for said state personally appeared MICHAEL TORRES, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the person or the entity upon behalf of which the person acted, executed the instrument.

Notary Public - State of New York

SEAL

ROBERT R. LaROCCA
Notary Public, State of New York
No. 4755028
Qualified in Rockland County
Commission Expires September 30, 20__

Exhibit +B Defendants Lien For common charges page 59

## SCHEDULE A

The unit known as apartment number 3C (hereinafter called the "unit") in the building known as number N-12 a/k/a 123 and the street number 1651 Metropolitan Avenue in the Borough and the County of the Bronx, City of New York, designated and described as Unit No. 3C in the Declaration establishing The Parkchester North Condominium (hereinafter called the "property"), made by the Parkchester Apts. Co., under the Condominium Act of the State of New York (Article 9-B of the Real Property Law of the State of New York), dated December 7, 1972, recorded in the Office of the Registrar in the City of New York, in the County of the Bronx, on the 11th day of December, 1972, in Reel 198, at page 65, (herein after called the "Declaration") and designated as Tax Lot No. 3712, in Blocks No. 3944 and 3962 of Section 15, of the Borough of the Bronx, on the Tax Map of the Real Property Assessment Department of the City of New York, on the floor plans of the Building, certified by Edward J. Hurley, Architect, on the 10th day of February, 1972, and filed in the Office of the Register of the City of New York, County of Bronx, on the 11th day of December, 1972 as Condominium Plan No. 2. The land on which the Building containing the unit is located (and in which the other buildings forming part of The Parkchester North Condominium are located) is described as follows:

The land area on which the Condominium unit is located being more particularly described in the Declaration of Condominium referred to above.

Together with an individual .0279 percent interest appurtenant to the unit in common elements of the property.

The use for with the unit is intended is that of a residence only as permitted by the By-Laws and applicable law.

Exhibit *B* Defendant J Lien for Common Charges   page 70

| | |
|---|---|
| **NYC DEPARTMENT OF FINANCE**<br>**OFFICE OF THE CITY REGISTER**<br><br>This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | <br><br>**2013090301071010001EFBF4** |

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 3 |
|---|---|---|
| **Document ID:** 2013090301071010<br>Document Type: LIEN OF COMMON CHARGES<br>Document Page Count: 2 | Document Date: 08-28-2013 | Preparation Date: 09-03-2013 |

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| ROY AND MONDELLO<br>828 SOUTH BROADWAY<br>SUITE 100<br>TARRYTOWN, NY 10591<br>914-591-7722<br>RRLAROCCA@RMLRLAW.COM | ROY AND MONDELLO<br>828 SOUTH BROADWAY<br>SUITE 100<br>TARRYTOWN, NY 10591<br>914-591-7722<br>RRLAROCCA@RMLRLAW.COM |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 3944 | 3378 Entire Lot | 1A | 1705 PURDY STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

CRFN_____ or DocumentID_____ or _____Year____ Reel____ Page____ or File Number_____

**PARTIES**

| **PARTY ONE/DEBTOR:** | **PARTY TWO/SECURED PA:** |
|---|---|
| ADAM PLOTCH<br>1705 PURDY STREET, APARTMENT 1A<br>BRONX, NY 10462 | BOARD OF MANAGERS PARKCHESTER NORTH CONDOMINIUM<br>1970 EAST TREMONT AVENUE<br>BRONX, NY 10462 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed      09-12-2013 12:16 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | **2013000372370** | | |
| Recording Fee: | $ | 47.00 | | | |
| Affidavit Fee: | $ | 0.00 | *City Register Official Signature* | | |

*Exhibit 7B Defendant Lien for common charges page 21*

## NOTICE OF LIEN FOR COMMON CHARGES

PLEASE TAKE NOTICE, that a Lien for Common Charges is hereby claimed by THE BOARD OF MANAGERS OF THE PARKCHESTER NORTH CONDOMINIUM, with offices at 1970 East Tremont Avenue, Bronx, New York, on behalf of the unit owners of the Parkchester North Condominium, against the unit known as Apartment No. 1A (hereinafter called "the unit"), in the Building known as No. N-10 a/k/a 119, and by the Street No. 1705 Purdy Street, in the Borough and County of the Bronx, City and State of New York, designated and described as Unit No. 1A in the Declaration establishing the Parkchester North Condominium (hereinafter called "the Property"), made by Parkchester Apts. Co., under the Condominium Act of the State of New York (Article 9-B of the Real Property Law of the State of New York), recorded in the Office of the Registrar in the City of New York, in the County of the Bronx, on the 11th day of December, 1972, in Reel 198, at page 65, (herein after called "the Declaration") and designated as Tax Lot No. 3378, in Blocks No. 3944 and 3962, of the Borough of the Bronx, on the Tax Map of the Real Property Assessment Department of the City of New York. The land on which the building containing the Unit is located (and on which the other buildings forming part of the Parkchester North Condominium are located) is described on Schedule A, annexed hereto and made a part hereof.

Upon information and belief, the name(s) of the record owner(s) is/are:
**ADAM PLOTCH**

The amount due under the said lien is $2,107.03 for common charges of said Condominium Unit which became due and payable for the period through and including 8/31/2013, pursuant to the By-Laws of the said Parkchester North Condominium.

**CHARLES TUCCI, being duly sworn, deposes and says:**

That deponent is General Manager and duly designated agent of The Board of Managers of The Parkchester North Condominium, having an office located at 1970 East Tremont Avenue, Bronx, New York 10462. The deponent has read the foregoing Notice of Lien and knows the contents thereof and that the same is true to deponent's own knowledge, except as to the matters therein stated to be upon information and belief, and to those matters deponent believes them to be true. This acknowledgment is made by deponent because The Board of Managers of The Parkchester North Condominium, is a Condominium Board and your deponent is the General Manager and duly designated agent of the Board of Managers of said Condominium. The grounds of your deponent's belief as to all matters not stated upon deponent's knowledge are records and accounts maintained by the Condominium.

Board of Managers of the
Parkchester North Condominium
by

Dated: August 28 2013

**CHARLES TUCCI, General Manager**

STATE OF NEW YORK )
                   ) ss.:
COUNTY OF BRONX    )

On the 28 day of August in the year 2013, before me the undersigned Notary Public in and for said state personally appeared CHARLES TUCCI, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the person or the entity upon behalf of which the person acted, executed the instrument.

Notary Public - State of New York

LILLIE MASCIA
NOTARY PUBLIC, STATE OF NEW YORK
NO. 03-4816399
QUALIFIED IN BRONX COUNTY
COMMISSION EXPIRES DEC 31, 2014

SEAL

Exhibit TB Defendant's Lien For Common Charges   page 22

## SCHEDULE A

The unit known as apartment number 1A (hereinafter called the "unit") in the building known as number N-10 a/k/a 119 and the street number 1705 Purdy Street in the Borough and the County of the Bronx, City of New York, designated and described as Unit No. 1A in the Declaration establishing The Parkchester North Condominium (hereinafter called the "property"), made by the Parkchester Apts. Co., under the Condominium Act of the State of New York (Article 9-B of the Real Property Law of the State of New York), dated December 7, 1972, recorded in the Office of the Registrar in the City of New York, in the County of the Bronx, on the 11th day of December, 1972, in Reel 198, at page 65, (herein after called the "Declaration") and designated as Tax Lot No. 3378, in Blocks No. 3944 and 3962 of Section 15, of the Borough of the Bronx, on the Tax Map of the Real Property Assessment Department of the City of New York, on the floor plans of the Building, certified by Edward J. Hurley, Architect, on the 10th day of February, 1972, and filed in the Office of the Register of the City of New York, County of Bronx, on the 11th day of December, 1972 as Condominium Plan No. 2. The land on which the Building containing the unit is located (and in which the other buildings forming part of The Parkchester North Condominium are located) is described as follows:

The land area on which the Condominium unit is located being more particularly described in the Declaration of Condominium referred to above.

Together with an individual 0.02 percent interest appurtenant to the unit in common elements of the property.

The use for with the unit is intended is that of a residence only as permitted by the By-Laws and applicable law.

*Exhibit 7B Defendant 7 Lien for Common charges page 73*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2012042400583001001E3F88

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|
| Document Date: 04-17-2012 | Preparation Date: 04-24-2012 |

**Document ID:** 2012042400583001
**Document Type:** DEED
**Document Page Count:** 3

**PRESENTER:**
JEWETT ABSTRACT CORP. (14598R-PLOTCH)
REDVISION (DH)
16 COURT STREET, STE 714 (P/U RV)
BROOKLYN, NY 11241
999-999-9999
danet.huckamchand@redvision.com

**RETURN TO:**
JEWETT ABSTRACT CORP.
706 FOREST AVENUE
STATEN ISLAND, NY 10310

**PROPERTY DATA**

| Borough | Block-Lot | Unit | Address |
|---|---|---|---|
| BRONX | 3944  2240  Entire Lot | 6F | 1970 EAST TREMONT AVENUE |

**Property Type:** SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

CRFN_____ or Document ID_____ or _____ Year_____ Reel ___ Page _____ or File Number_____

**PARTIES**

**GRANTOR/SELLER:**
JOSEPH STRASBURG, ESQ.
123 WILLIAM STREET, 14TH FLOOR
NEW YORK, NY 10038

**GRANTEE/BUYER:**
ADAM PLOTCH
95 WEST 95TH STREET
NEW YORK, NY 10025

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | $ | 125.00 |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | | |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | $ | 885.00 |
| Exemption: | | | NYS Real Estate Transfer Tax: | $ | 114.00 |
| TAXES: County (Basic): | $ | 0.00 | | | |
| City (Additional): | $ | 0.00 | RECORDED OR FILED IN THE OFFICE | | |
| Spec (Additional): | $ | 0.00 | OF THE CITY REGISTER OF THE | | |
| TASF: | $ | 0.00 | CITY OF NEW YORK | | |
| MTA: | $ | 0.00 | Recorded/Filed     04-25-2012 14:52 | | |
| NYCTA: | $ | 0.00 | City Register File No.(CRFN): | | |
| Additional MRT: | $ | 0.00 | 2012000164963 | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 52.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annette M Hill*

*City Register Official Signature*

Exhibit TB Defendant 7 Lien to Common Charges    page 24

## REFEREE'S DEED IN FORECLOSURE

THIS DEED, made April 17, 2012, between

JOSEPH STRASBURG, ESQ., 123 William Street, 14th Floor, New York, New York 10038 as Referee duly appointed in an action hereinafter mentioned, GRANTOR, and

ADAM PLOTCH, with principal place of business at 95 West 95th Street, New York, NY 10025, GRANTEE.

## W I T N E S S E T H :

That GRANTOR, the Referee appointed in an action in the Supreme Court of the State of New York, county of Bronx, Index No. 380043/10 entitled "BOARD OF MANAGERS OF THE PARKCHESTER NORTH CONDOMINIUM, on behalf of its unit owners of the Parkchester North Condominium, Plaintiff, against, LINDA BAILEY, MR. BAILEY AND MS. BAILEY, all at 1970 East Tremont Avenue, #6F, Bronx, New York 10462; City of New York Environmental Control Board, 66 John Street, New York, New York 10007; City of New York Parking Violations Bureau, 100 Church Street, New York, New York; NYC Transit Authority, Transit Adjudication Bureau, 130 Livingston Street, Brooklyn, New York; Criminal Court of the City of New York, 215 E. 161st Street, Bronx, New York; and Colorado Capital Investments, Inc., 305 NE Loop #820, Hurst, Texas, Defendants," foreclosing a Lien for common charges recorded on September 4, 2009 in the Office of the City Register, Bronx County as CRFN# 2009000286184, and in pursuance of a Judgment entered at a I. A. Part 25 of the Supreme Court of the State of New York, County of Bronx on October 27, 2011, and in consideration of the sum bid of twenty-eight thousand five hundred 00/100 dollars ($28,500.00), being the highest sum bid at the Sale conducted under said Judgment, does hereby grant and convey to the GRANTEE,

14598 Plotch

*Exhibit 7B Defendant & lien for common charges   page 25*

## SCHEDULE A

## DESCRIPTION OF PREMISES

The Unit known as apartment No. 6-F (hereinafter called "the Unit") in the Building known as number N-5 a/k/a 102 and by the street number 1970 EAST TREMONT AVENUE, in the Borough and County of the Bronx, the City and State of New York, designated and described as Apartment Unit No. 6-F in the Declaration establishing The Parkchester North Condominium (hereinafter called the "Property"), made by the Parkchester Apts. Co. under the Condominium Act of the State of New York (Article 9-B of the Real Property Law of the State of New York), dated December 7, 1972, recorded in the Office of the Register of the City of New York, in the County of The Bronx, on the 10th day of February, 1972, in Reel 198 at Page 65, as amended by First Amendment to Declaration of Condominium recorded in said Register's Office on the 22nd day of July, 2003, under CRFN NO. 2003000246075 (hereinafter called the "Declaration"), and designated also as SECTION 15 BLOCK 3944 LOT(S) 2240, of the Borough of The Bronx on the Tax Map of the Real Property Assessment Department of the City of New York, on the floor plans and site plan ("the Floor Plans"), certified by Edward J. Hurley, Architect, filed in the said Register's Office as Condominium Plan No. 2. The land on which the Building containing the Unit is located (an on which other buildings forming part of The Parkchester North Condominium are located) is described on Exhibit A attached hereto and made part hereof.

TOGETHER with an undivided .0365 percent interest appurtenant to the Unit in the common elements of the Property (hereinafter called the "common elements");

FOR COMPLETE DESCRIPTION  -  SEE ORIGINAL DOCUMENTS

*Exhibit 7B Defendant 7 Lien for Common Charges     page 26*

SUBJECT TO:

1. Zoning ordinances, restrictions and regulations imposed by any governmental authority;
2. The Declaration, By-Laws and Rules and Regulations of the Parkchester North Condominium and all amendments thereto;
3. All covenants, restrictions, easements, rights, agreements, reservations of record, if any, affecting the premises;
4. Any state of facts an accurate survey would show;
5. A mortgage now a lien of record made to JPMorgan Chase Bank, NA; FA, in the original principal sum of $60,000.00, and accrued interest; and
6. Occupants of the premises whose interests have been foreclosed by the foreclosure action referred to herein.

TO HAVE AND TO HOLD the premises whose herein granted unto the GRANTEE, its heirs and assigns forever.

IN WITNESS WHEREOF, The GRANTOR has hereunto set his hand and seal the date first above written.

JOSEPH STRASBURG, Referee

STATE OF NEW YORK     )
                      )  ss.:
COUNTY OF NEW YORK    )

On April 17 , 2012, before me, the undersigned, a Notary Public in and for said State, personally appeared JOSEPH STRASBURG, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public-State of New York

BRETT P. HERMAN
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02HE5022950
QUALIFIED IN KINGS COUNTY
COMMISSION EXPIRES March 3 2014

SEAL

Exhibit 7B Defendant 7 Lien For Common Charges    page 27



## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2011082401451001001EBAF8

### RECORDING AND ENDORSEMENT COVER PAGE
PAGE 1 OF 7

**Document ID:** 2011082401451001    Document Date: 08-09-2011    Preparation Date: 08-24-2011
**Document Type:** DEED
**Document Page Count:** 6

| PRESENTER: | RETURN TO: |
|---|---|
| JEWETT ABSTRACT (14091A) | JEWETT ABSTRACT CORP |
| REDVISION (DH) | 706 FOREST AVENUE |
| 16 COURT STREET, STE 714 (P/U RV) | STATEN ISLAND, NY 10310 |
| BROOKLYN, NY 11241 | |
| 999-999-9999 | |
| danet.huckamchand@redvision.com | |

### PROPERTY DATA
| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 3944 | 2759 Entire Lot | 3H | 2120 EAST TREMONT AVENUE |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year_____ Reel ___ Page ___ or File Number_____

### PARTIES
| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| DENNIS E. KROLIAN, AS REFEREE | ADAM PLOTCH |
| 21 EARLEWOODE DRIVE | 95 WEST 95TH STREET |
| WHITE PLAINS, NY 10601 | NEW YORK, NY 10025 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 1,354.94 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 100.00 |
| Spec (Additional): | $ | 0.00 | RECORDED OR FILED IN THE OFFICE | | |
| TASF: | $ | 0.00 | OF THE CITY REGISTER OF THE | | |
| MTA: | $ | 0.00 | CITY OF NEW YORK | | |
| NYCTA: | $ | 0.00 | Recorded/Filed    08-31-2011 09:45 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | 2011000308216 | | |
| Recording Fee: | $ | 67.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

*City Register Official Signature*

Exhibit 9B Defendant & Lien For Common Charges page 30

REFEREE'S DEED IN FORECLOSURE

THIS DEED, made August 9, 2011, between

DENNIS EDWARD KROLIAN, 21 Earlwoode Drive, White Plains, New York 10601 as Referee duly appointed in an action hereinafter mentioned, GRANTOR, and

ADAM PLOTCH, with principal place of business at 95 West 95th Street, New York, NY 10025, GRANTEE.

W I T N E S S E T H :

That GRANTOR, the Referee appointed in an action in the Supreme Court of the State of New York, county of Bronx, Index No. 380439/09 entitled "BOARD OF MANAGERS OF THE PARKCHESTER NORTH CONDOMINIUM, on behalf of its unit owners of the Parkchester North Condominium, Plaintiff, against, Xavier Ezell, and Jacqueline Ezell, 117-27 223rd Street, #MG, Cambria Heights, New York 11411; City of New York Environmental Control Board, 66 John Street, New York, New York 10007; NYC Transit Authority, Transit Adjudication Bureau, 130 Livingston Street, Brooklyn, New York; and Washington Mutual Bank FA, One Chase Plaza, New York, New York Defendants," foreclosing a Lien for common charges recorded on February 26, 2008 in the Office of the City Register, Bronx County as CRFN# 2008000078701, and in pursuance of a Judgment entered at a I. A. Part 12 of the Supreme Court of the State of New York, County of Bronx on May 11, 2010, and in consideration of the sum bid of twenty-five thousand 00/100 dollars, being the highest sum bid at the Sale conducted under said Judgment, does hereby grant and convey to the GRANTEE,

14051A Plotch,
Block 3944
Lot 2709

Exhibit "B" Defendant J Lien for Common Charges page 29

**SCHEDULE A**

*(Description)*

TITLE NUMBER: F-S-27322

The Unit known as Apartment No. 3H (hereinafter called the "Unit") in the Building known as number N-7 and by the street number 2120 East Tremont Avenue in the Borough and County of the Bronx, City and State of New York, designated and described as Unit No. 3H in the Declaration establishing The Parkchester North Condominium (hereinafter called the "Property"), under the Condominium Act of the State of New York (Article 9-B of the Real Property Law of the State of New York), dated December 7, 1972, recorded in the Office of the Register of the City of New York, in the County of the Bronx, on the 11th day of December, 1972, in Reel 198, at Page 65 (hereinafter called the "Declaration") and designated as Tax Lot No. 2759 in Block No. 3944 of Section 15 of the Borough of the Bronx on the Tax Map of the Real Property Assessment Department of the City of New York, and on the Floor Plans of the Building, certified by Edward J. Hurley, Architect, on the 10th day of February, 1972, and filed in the Office of the Register of the City of New York, County of the Bronx, on the 11th day of December, 1972, as Condominium Plan No. 2. The land on which the Building containing the Unit is located (and on which the other buildings forming part of The Parkchester North Condominium are located) is described as follows:

TOGETHER with an undivided .0282 percent interest in the common elements of the Property (hereinafter called the "Common Elements").

FOR CONVEYANCING ONLY, if intended to be conveyed: Together with all rights, title and interest of, in and to any streets and roads abutting the above described premises, to the center line thereof.

Schedule A (Description) Page 1 of 4

Exhibit AB Defendant's Lien For Common Charges page 30

## SCHEDULE A
### (Description)

TITLE NUMBER: F-B-27322

ALL those certain lots, pieces or parcels of land, situate, lying and being in the Borough and County of the Bronx, City and State of New York, bounded and described as follows:

### PARCEL I

BEGINNING at a point on the southerly side of East Tremont Avenue at the easterly end of a curve having a radius of 15 feet connecting the southerly side of East Tremont Avenue with the northeasterly side of Unionport Road;

THENCE easterly along the southerly side of East Tremont Avenue 593.38 feet;

THENCE South 8 degrees 31 minutes 48.5 seconds East 35.50 feet to a point of curve;

THENCE on a curve to the left having a radius of 125 feet a distance of 187.864 feet;

THENCE South 4 degrees 38 minutes 25 seconds East 4 feet;

THENCE on a curve to the right having a radius of 60.50 feet, a distance of 75.615 feet to a point of tangency;

THENCE South 23 degrees 01minutes and 48.5 seconds East 26.925 feet to a point a curve;

THENCE on a curve to the left having a radius of 211 feet, a distance of 94.83 feet to a point of compound curve;

THENCE on a curve to the left having a radius of 292.50 feet, a distance of 507.956 feet to a point of compound curve;

THENCE on a curve to the left having a radius of 211 feet, a distance of 80.488 feet to a point of tangency;

THENCE North 9 degrees 51 minutes 53.5 seconds East 43 feet to a point of curve;

THENCE on a curve to the right having a radius of 71 feet, a distance of 71.11 feet to a point of tangency;

THENCE North 87 degrees 15 minutes 00 seconds East 52 feet to a point of curve;

THENCE on a curve to the left having a radius of 275 feet, a distance of 151.19 feet to a point of compound curve;

Schedule A (Description) Page 2 of 4

Exhibit 7B Defendant g Lien for common charges page 36

## SCHEDULE A

### (Description)

TITLE NUMBER: F-B-27322

THENCE on a curve to the left having a radius of 108.935 feet, a distance of 82.64 feet to the southerly side of East Tremont Avenue;

THENCE easterly along the southerly side of East Tremont Avenue, 839.845 feet to the westerly side of Purdy Street;

THENCE southerly along the westerly side of Purdy Street 512.463 feet to the northerly end of a curve connecting the westerly side of Purdy Street with the northerly side of Metropolitan Avenue;

THENCE southerly and westerly along said curve, being a curve to the right having a radius of 30 feet a distance of 55 feet to the northerly side of Metropolitan Avenue;

THENCE westerly along the northerly side of Metropolitan Avenue 1424.291 feet to the east end of the easterly of three curves connecting the northerly side of Metropolitan Avenue with the northeasterly side of Unionport Road;

THENCE westerly and northwesterly along said three curve connecting the Avenue and Road as aforesaid 817.286 feet to the northeasterly side of Unionport Road;

THENCE northwesterly along the northeasterly side of Unionport Road 869.544 feet to the southeasterly end of the curve connecting northeasterly side of Unionport Road with the southerly side of East Tremont Avenue;

THENCE northerly and easterly along said curve, being a curve to the right having a radius of 15 feet, a distance of 31.019 feet to East Tremont Avenue at the point and place of BEGINNING.

PARCEL II

BEGINNING at a point on the easterly side of Purdy Street distanT 291.305 feet southerly from the corner formed by the intersection of the easterly side of Purdy Street with the southerly side of East Tremont Avenue;

THENCE South 88 degrees 31 minutes 20 seconds East 238.586 feet, South 8 degrees 09 minutes 15.2 seconds East 90.029 feet and South 16 degrees 16 minutes 22.5 seconds East 123.053 feet to a point on the northerly side of Metropolitan Avenue distant 90.49 feet westerly from the northwest corner of Metropolitan Avenue and Castle Hill Avenue;

Schedule A (Description) Page 3 of 4

Exhibit ＃B Defendant 2 Lien for Common Charges page 32

**SCHEDULE A**

*(Description)*

TITLE NUMBER: F-B-27322

THENCE westerly along the northerly side of Metropolitan Avenue, 131.24 feet to the easterly end of a curve connecting the northerly side of Metropolitan Avenue with the easterly side of Purdy Street;

THENCE westerly and northerly along said curve, being a curve to the right having a radius of 70 feet a distance of 91.57 feet to the easterly side of Purdy Street;

THENCE northerly along the easterly side of Purdy Street 207.645 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY:  Said premises also known as 2120 East Tremont Ave. #3H, Bronx, NY.

The use for which the premises is intended is for residential purposes only as permitted by the By-Laws of the Parkchester North Condominium and applicable law.

*Exhibit #B Defendant 's Lien for Common Charges page 33*

SUBJECT TO:

    1.  Zoning ordinances, restrictions and regulations imposed by any governmental authority;

    2.  The Declaration, By-Laws and Rules and Regulations of the Parkchester North Condominium and all amendments thereto;

    3.  All covenants, restrictions, easements, rights, agreements, reservations of record, if any, affecting the premises;

    4.  Any state of facts an accurate survey would show;

    5.  A mortgage now a lien of record owed to Washington Mutual Bank, PA, in the original principal sum of $96,300.00, and accrued interest; and

    6.  Occupants of the premises whose interests have been foreclosed by the foreclosure action referred to herein.

    TO HAVE AND TO HOLD the premises whose herein granted unto the GRANTEE, its heirs and assigns forever.

    IN WITNESS WHEREOF, The GRANTOR has hereunto set his hand and seal the date first above written.

                              DENNIS EDWARD KROLIAN, Referee

STATE OF NEW YORK    )

                      ) ss.:

COUNTY OF WESTCHESTER )

    On August 9th, 2011, before me, the undersigned, a Notary Public in and for said State, personally appeared DENNIS EDWARD KROLIAN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                                Notary Public-State of New York

**SEAL**

BRETT P. HERMAN
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02HE5022950
QUALIFIED IN KINGS COUNTY
COMMISSION EXPIRES ... *March 3 2014*

Exhibit 7B Defendant's Lien For Common Charges    page 34



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2012061101173001001EE101

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 7 |
|---|---|
| Document ID: 2012061101173001 | Document Date: 05-22-2012 | Preparation Date: 06-11-2012 |

Document Type: DEED
Document Page Count: 6

| PRESENTER: | RETURN TO: |
|---|---|
| JEWETT ABSTRACT CORP (14762R)<br>REDVISION (DH)<br>16 COURT STREET, STE 714 (P/U RV)<br>BROOKLYN, NY 11241<br>999-999-9999<br>danet.huckamchand@redvision.com | ADAM PLOTCH, ESQ.<br>95 WEST 95TH STREET<br>NEW YORK, NY 10025 |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 3944 | 2977 | Entire Lot | 1E | 2140 EAST TREMONT AVENUE |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

CRFN_____  or  Document ID_____  or  _____  Year ____  Reel ___  Page ____  or  File Number_____

**PARTIES**

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| DAVID MORISSET, AS REFEREE<br>2809 CHURCH AVENUE<br>BROOKLYN, NY 11226 | ADAM PLOTCH<br>95 WEST 95TH STREET<br>NEW YORK, NY 10025 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 414.68 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 166.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 67.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed    06-18-2012 12:13
City Register File No.(CRFN):
2012000236583

*City Register Official Signature*

01/12/2012 07:34PM 2014887047    EMANUEL DELVALLE    PAGE 04/10

Exhibit YB Defandant 2 Lien for Common Charges page 35
14762a Plotch
Block 3944
Lot 2977

REFEREE'S DEED IN FORECLOSURE

THIS DEED, made May 22, 2012, between

DAVID MORISSET, ESQ., 2809 Church Avenue, Brooklyn, NY 11226, as
Referee duly appointed in an action hereinafter mentioned, GRANTOR, and

ADAM PLOTCH, with principal place of business at 95 West 95th
Street, New York, NY 10025, Bronx, NY 10462, GRANTEE.

W I T N E S S E T H :

That GRANTOR, the Referee appointed in an action in the Supreme

Court of the State of New York, county of Bronx, Index No. 381082/07 entitled

"BOARD OF MANAGERS OF THE PARKCHESTER NORTH CONDOMINIUM, on behalf of its

unit owners of the Parkchester North Condominium, Plaintiff, against, CARLINE

SMITH, at 95 North Goodwin Avenue, Elmsford, NY 10523, and Wells Fargo Bank,

NA, with offices at 90 South 7th Street, Minneapolis, MN 55402, Defendants,"

foreclosing a Lien for common charges recorded on December 21, 2006 in the

Office of the City Register, Bronx County as CRFN# 2006000697888, and in

pursuance of a Judgment entered at a I. A. Part 7 of the Supreme Court of the

State of New York, County of Bronx on August 5, 2010, and in consideration of

twenty-four thousand one hundred dollars 00/100, being the highest sum bid at

the Sale conducted under said Judgment, does hereby grant and convey to the

GRANTEE,



*Exhibit #7b Defendants Lien for Common Charges page 36*

## PARKCHESTER NORTH
### SCHEDULE A

The Unit known as Apartment No. 1-E (hereinafter called "the Unit") in the Building known Number N-8 and by the Street Number 2140 East Tremont Avenue in the County of the Bronx, C and State of New York designated and described as Unit No. 1-E in the Declaration establishing 1 Parkchester North Condominium (hereinafter called the "Property"), under the Condominium Act the State of New York (Article 9-B of the Real Property Law of the State of New York), Dat December 7, 1972, Recorded in the Office of the Registers of the City of New York, in the County the Bronx, on the 11th day of December, 1972 in Reel 198 Page 65 (hereinafter called t "Declaration") and designated as Tax Lot No. 2977 Block No. 3944 Section 15 of the Borough of Bronx on the Tax Map of the Real Property Assessment Department of the City of New York, and the Floor Plans of the Building, certified by Edward J. Hurley, Architect, on the 10th day February, 1972, and filed in the Office of the Register of the City of New York, County of tl Bronx, on the 11th day of December, 1972, as Condominium Plan No. 2. The Land on which t Building containing the Unit is located (and on which the other Buildings forming part of t Parkchester North Condominium are located) is described as follows:

ALL those certain lots, pieces or parcels of land situate, lying and being in the Borough and Cour of the Bronx, City and State of New York, bounded and described as follows:

### PARCEL I

BEGINNING at a point on the Southerly side of East Tremont Avenue at the Easterly end of a cur having a radius of 15 feet connecting the Southerly side of East Tremont Avenue with Northeaster side of Unionport Road;

THENCE Easterly along the Southerly side of East Tremont Avenue 593.36 feet;

THENCE South 8 degrees 31 minutes 46.5 seconds East 35.50 feet to a point of a curve;

THENCE on a curve to the left having a radius of 125 feet a distance of 187.864 feet;

THENCE South 4 degrees 38 minutes 25 seconds East 4 feet;

THENCE on a curve to the right having a radius of 60.50 feet, a distance of 75.615 feet to a point tangency;

THENCE South 23 degrees 01 minutes and 46.5 seconds East 26.925 feet to a point of curve;

THENCE on a curve to the left having a radius of 211 feet a distance of 94.83 feet to a point o compound curve;

THENCE on a curve to the left having a radius of 292.50 feet, a distance of 507.956 feet to a point compound curve;

THENCE on a curve to the left having a radius of 211 feet, a distance of 80.486 feet to a point o tangency;

THENCE North 9 degrees 51 minutes 53.5 seconds East 43 feet to a point of curve;

THENCE on a curve to the right having a radius of 71 feet; a distance of 71.11 feet to a point ol

- continued on next page -

Exhibt 7B Defendants Lien for common charges  page 37

## SCHEDULE A  (continued)

tangency;

THENCE North 67 degrees 15 minutes 00 seconds East 52 feet to a point of curve;

THENCE on a curve to the left having a radius of 275 feet, a distance of 151.19 feet to a point compound curve;

THENCE on a curve to the left having a radius of 106.935 feet, a distance of 82.64 feet to tl Southerly side of East Tremont Avenue;

THENCE Easterly along the Southerly side of East Tremont Avenue 639.645 feet to the Westerly si of Purdy Street;

THENCE Southerly along the Westerly side of Purdy Street 512.463 feet to the Northerly end of curve connecting the Westerly side of Purdy Street with the Northerly side of Metropolitan Avenue;

THENCE Southerly and Westerly along said curve, being a curve to the right having radius of 30 fe a distance of 55 feet to the Northerly side of Metropolitan Avenue;

THENCE Westerly along the Northerly side of Metropolitan Avenue 1424.291 feet to East end of tl Easterly of three curves connecting the Northerly side of Metropolitan Avenue with the Northeasterl side of Unionport Road;

THENCE Westerly and Northwesterly along said three curves connecting the Avenue and Road a aforesaid 617.286 feet to the Northeasterly side of Unionport Road;

THENCE Northwesterly along the Northeasterly side of Unionport Road 869.544 feet to th Southeasterly end of the curve connecting Northeasterly side of Unionport Road with Southerly sid of East Tremont Avenue;

THENCE Northerly and Easterly along said curve, being a curve to the right having a radius of 1! feet, a distance of 31.019 feet to the East Tremont Avenue at the point and place of BEGINNING.

### PARCEL II

BEGINNING at a point on the Easterly side of Purdy Street distant 291.305 feet Southerly from th corner formed by the intersection of the Easterly side of Purdy Street with the Southerly side of East Tremont Avenue;

THENCE South 88 degrees 31 minutes 20 seconds East 238.586 feet, South 8 degrees 09 minute 15.2 seconds East 90.029 feet and South 16 degrees 16 minutes 22.5 seconds East 123.053 feet to a point on the Northerly side of Metropolitan Avenue distant 90.49 feet Westerly from the Northwest

- continued on next page -

Exhibit #B Defendant's Lien For Common Changes page 30

## SCHEDULE A  (continued)

corner of Metropolitan Avenue and Castle Hill Avenue;

THENCE Westerly along the Northerly side of Metropolitan Avenue 131.24 feet to the Easterly end of a curve connecting the Northerly side of Metropolitan Avenue with the Easterly side of Purdy Street;

THENCE Westerly and Northerly along said curve, being a curve to the right having a radius of 70 feet a distance of 91.57 feet to the Easterly side of Purdy Street;

THENCE Northerly along the Easterly side of Purdy Street 207.045 feet to the point and place of BEGINNING.

TOGETHER WITH an undivided .0340 percent interest in the Common Elements of the Property (hereinafter called the "Common Elements");

TOGETHER WITH an Easement for the continuance of all Encroachments by the Unit on any adjoining Units or Common Elements now existing as a result of construction of the Building, or which may come into existence hereafter as a result of settling or shifting of the Building, or as a result or repair of restoration of the Building or of the Unit after damage or destruction by fire or other casualty, or after a taking in Condemnation or Eminent Domain Proceedings, or by reason of an alteration to the Common Elements, so that any such Encroachments may remain so long as the Building shall stand;

TOGETHER WITH an Easement in common with the Owners of the Units to use in accordance with present use and present available facilities any pipes, wires, ducts, cables, conduits, public utility lines and other Common Elements located in any of the other Units or elsewhere on the Property and serving the Unit;

TOGETHER WITH the appurtenances and all the Estate and Rights of the Grantor in and to the Unit;

TOGETHER WITH and SUBJECT to all Easements of necessity in favor of the Unit or in favor of other Units or the Common Elements;

SUBJECT to Easements in favor of adjoining Units and in favor of the Common Elements for the continuance of all Encroachments of such adjoining Units or Common Elements on the Unit now existing as a result of construction of the Building, or which may come into existence hereafter as a result of settling or shifting of the Building, or as a result of repair or restoration of the Building or of any adjoining Unit or of the Common Elements after damage or destruction by fire or other casualty, or after a taking in Condemnation or Eminent Domain Proceedings, or by reason of an alteration to the Common Elements, so that any such Encroachments may remain so long as the Building shall stand;

- continued on next page -

Exhibit 7B Defendant 7 Lien for common Charges      page 37

## SCHEDULE A   (continued)

**SUBJECT** also to an Easement in favor of the other Units to use in accordance with present use present available facilities the pipes, wires, ducts, conduits, cables, public utility lines and other Common Elements located in the Unit or elsewhere on the Property and serving such other Units;

**SUBJECT** also to the Easement for the use of steam pipes, wires, conduits and lines in the granted by Agreement Dated December 14, 1972 and Recorded in the Office of the Register of City of New York in the County of the Bronx, in Reel 208 at Page 1862.

**SUBJECT** also to Agreement Dated December 14, 1972 and Recorded in the Office of the Register the City of New York, County of the Bronx in Reel 208 at Page 1850.

**SUBJECT** also to the Provisions of the Declaration and of the By-Laws of the Condominium Recorded simultaneously with and as part of the Declaration, as the same may be Amended from time to time by Instruments Recorded in the Office of the Register of the City of New York, in the County of the Bronx, which Provisions, TOGETHER WITH any Amendments thereto, shall constitute covenants RUNNING WITH the Land and shall bind any person having at any time any Interest or Estate in the Unit, as though such Provisions were recited and stipulated at length herein;

The Grantee accepts and ratifies the Provisions of the Declaration and the By-Laws and the Rules and Regulations of the Condominium Recorded simultaneously with and as part of the Declaration and agrees to comply with all the Terms and Provisions thereof as the same may be Amended from time to time by Instruments Recorded in the Office of the Register of the City of New York, County of the Bronx.

The use for which the Unit is intended is that of Residence Only.

Exhibit 7B Defendant of lien for common changes page 40

SUBJECT TO:

    1.  Zoning ordinances, restrictions and regulations imposed by any governmental authority;

    2.  The Declaration, By-Laws and Rules and Regulations of the Parkchester North Condominium and all amendments thereto;

    3.  All covenants, restrictions, easements, rights, agreements, reservations of record, if any, affecting the premises;

    4.  Any state of facts an accurate survey would show;

    5.  Occupants of the premises whose interests have been foreclosed by the foreclosure action referred to herein.

    TO HAVE AND TO HOLD the premises whose herein granted unto the GRANTEE, its heirs and assigns forever.

    IN WITNESS WHEREOF, The GRANTOR has hereunto set his hand and seal the date first above written.



DAVID MORISSET, ESQ. / Referee

STATE OF NEW YORK      )
                          ) ss.:
COUNTY OF WESTCHESTER )

    On May 22, 2012, before me, the undersigned, a Notary Public in and for said State, personally appeared DAVID MORISSET, ESQ., personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public-State of New York

ANDREW A. ZALTMAN
NOTARY PUBLIC, State of New York
No. 01ZA4885023
Qualified in Nassau County
Commission Exp March 24, 2014

SEAL

Record & Return:
Adam Plotch, Esq.
95 west 95th st
NY NY 10025

Exhibit 7B Defendant's Lien for common charges page 41



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2013072301181001001E1955

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 7 |
|---|---|---|
| Document ID: 2013072301181001 | Document Date: 07-19-2013 | Preparation Date: 07-23-2013 |
| Document Type: DEED | | |
| Document Page Count: 6 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| TITLEVEST AGENCY | TITLEVEST AGENCY |
| 44 WALL STREET, PICKUP/F-B-351484 | 44 WALL STREET, PICKUP/F-B-351484 |
| 10TH FLOOR | 10TH FLOOR |
| NEW YORK, NY 10005 | NEW YORK, NY 10005 |
| 212-757-5800 | 212-757-5800 |
| RECORDINGS@TITLEVEST.COM | RECORDINGS@TITLEVEST.COM |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 3944 | 2952 | Entire Lot  TF | 2160 EAST TREMONT AVENUE |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

CRFN_____   or   DocumentID_____   or   _____ Year____ Reel____ Page____   or   File Number_____

**PARTIES**

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| CHARLES F. TAIBI, AS REFEREE | ADAM PLOTCH |
| 770 ALLERTON AVENUE | 95 W. 95TH STREET |
| BRONX, NY 10467 | NEW YORK, NY 10025 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | $ | 125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 1,340.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 104.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 67.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed        10-02-2013 11:50
City Register File No.(CRFN):
2013000407005

*Annett M Hill*

**City Register Official Signature**

*Exhibit +D Defendant J Lien For Common Charge page 47*

## REFEREE'S DEED IN FORECLOSURE

THIS DEED, made July 19th, 2013, between

CHARLES F. TAIBI, ESQ., 770 Allerton Avenue, Bronx, NY 10467, as Referee duly appointed in an action hereinafter mentioned, GRANTOR, and

ADAM PLOTCH, with principal place of business at 95 W. 95th Street, NY, NY 10025, GRANTEE.

## W I T N E S S E T H :

That GRANTOR, the Referee appointed in an action in the Supreme Court of the State of New York, county of Bronx, Index No. 381183/2008 entitled "BOARD OF MANAGERS OF THE PARKCHESTER NORTH CONDOMINIUM, on behalf of its unit owners of the Parkchester North Condominium, Plaintiff, against, ADRIAN HEREDIA, at 2160 East Tremont Avenue #TF, Bronx, NY 10462; New York City Transit Authority, Transit Adjudication Bureau with offices at 130 Livingston Street, Bronx, NY 11201, Defendants," foreclosing a Lien for common charges recorded on February 26, 2008 in the Office of the City Register, Bronx County as CRFN# 2008000078704, and in pursuance of a Judgment entered at a

I. A. Part 4 of the Supreme Court of the State of New York, County of Bronx on February 14, 2013, and in consideration of twenty six thousand 100/00 ($26,000.00) dollars, being the highest sum bid at the Sale conducted under said Judgment, does hereby grant and convey to the GRANTEE,

EXHiBiT TB Defendant Lien for Common Change page 73

TITLE INS. C-D-214JS

## PARKCHESTER NORTH
## SCHEDULE A

The Unit known as Apartment No.TF (hereinafter called "the Unit") in the Building known as Number N-8 and by the Street Number 2160 East Tremont Avenue in the County of the Bronx, City and State of New York designated and described as Unit No. TF in the Declaration establishing The Parkchester North Condominium (hereinafter called the "Property"), under the Condominium Act of the State of New York (Article 9-B of the Real Property Law of the State of New York), Dated December 7, 1972, Recorded in the Office of the Registers of the City of New York, in the County of the Bronx, on the 11th day of December, 1972 in Reel 198 Page 65 (hereinafter called the "Declaration") and designated as Tax Lot No. 2952 Block No.3944 Section 15 of the Borough of the Bronx on the Tax Map of the Real Property Assessment Department of the City of New York, and on the Floor Plans of the Building, certified by Edward J. Hurley, Architect, on the 10th day of February, 1972, and filed in the Office of the Register of the City of New York, County of the Bronx, on the 11th day of December, 1972, as Condominium Plan No. 2. The Land on which the Building containing the Unit is located (and on which the other Buildings forming part of the Parkchester North Condominium are located) is described as follows:

ALL those certain lots, pieces or parcels of land situate, lying and being in the Borough and County of the Bronx, City and State of New York, bounded and described as follows:

### PARCEL I

BEGINNING at a point on the Southerly side of East Tremont Avenue at the Easterly end of a curve having a radius of 15 feet connecting the Southerly side of East Tremont Avenue with Northeasterly side of Unionport Road;

THENCE Easterly along the Southerly side of East Tremont Avenue 593.36 feet;

THENCE South 8 degrees 31 minutes 46.5 seconds East 35.50 feet to a point of a curve;

THENCE on a curve to the left having a radius of 125 feet a distance of 187.864 feet;

THENCE South 4 degrees 38 minutes 25 seconds East 4 feet;

THENCE on a curve to the right having a radius of 60.50 feet, a distance of 75.615 feet to a point of tangency;

THENCE South 23 degrees 01 minutes and 46.5 seconds East 26.925 feet to a point of curve;

THENCE on a curve to the left having a radius of 211 feet a distance of 94.83 feet to a point of compound curve;

THENCE on a curve to the left having a radius of 292.50 feet, a distance of 507.956 feet to a point of compound curve;

THENCE on a curve to the left having a radius of 211 feet, a distance of 80.486 feet to a point of tangency;

THENCE North 9 degrees 51 minutes 53.5 seconds East 43 feet to a point of curve;

THENCE on a curve to the right having a radius of 71 feet; a distance of 71.11 feet to a point of

- continued on next page -

*Exhibit 7B Defendant 7 Lien for Common changes page 44*

# EASTERN ABSTRACT CORP.

Title No. E-B-21459

## SCHEDULE A (continued)

tangency;

THENCE North 67 degrees 15 minutes 00 seconds East 52 feet to a point of curve;

THENCE on a curve to the left having a radius of 275 feet, a distance of 151.19 feet to a point of compound curve;

THENCE on a curve to the left having a radius of 106.935 feet, a distance of 82.64 feet to the Southerly side of East Tremont Avenue;

THENCE Easterly along the Southerly side of East Tremont Avenue 639.645 feet to the Westerly side of Purdy Street;

THENCE Southerly along the Westerly side of Purdy Street 512.463 feet to the Northerly end of a curve connecting the Westerly side of Purdy Street with the Northerly side of Metropolitan Avenue;

THENCE Southerly and Westerly along said curve, being a curve to the right having radius of 30 feet a distance of 55 feet to the Northerly side of Metropolitan Avenue;

THENCE Westerly along the Northerly side of Metropolitan Avenue 1424.291 feet to East end of the Easterly of three curves connecting the Northerly side of Metropolitan Avenue with the Northeasterly side of Unionport Road;

THENCE Westerly and Northwesterly along said three curves connecting the Avenue and Road as aforesaid 617.286 feet to the Northeasterly side of Unionport Road;

THENCE Northwesterly along the Northeasterly side of Unionport Road 869.544 feet to the Southeasterly end of the curve connecting Northeasterly side of Unionport Road with Southerly side of East Tremont Avenue;

THENCE Northerly and Easterly along said curve, being a curve to the right having a radius of 15 feet, a distance of 31.019 feet to the East Tremont Avenue at the point and place of BEGINNING.

## PARCEL II

BEGINNING at a point on the Easterly side of Purdy Street distant 291.305 feet Southerly from the corner formed by the intersection of the Easterly side of Purdy Street with the Southerly side of East Tremont Avenue;

THENCE South 88 degrees 31 minutes 20 seconds East 238.586 feet, South 8 degrees 09 minutes 15.2 seconds East 90.029 feet and South 16 degrees 16 minutes 22.5 seconds East 123.053 feet to a

*Insure*

- continued on next page -

United General Title Insurance Company

Exhibit #B Defendant's Lien for common charges page 45

## EASTERN ABSTRACT CORP.

### Title No. E-B-21459

### SCHEDULE A (continued)

point on the Northerly side of Metropolitan Avenue distant 90.49 feet Westerly from the Northwest corner of Metropolitan Avenue and Castle Hill Avenue;

THENCE Westerly along the Northerly side of Metropolitan Avenue 131.24 feet to the Easterly end of a curve connecting the Northerly side of Metropolitan Avenue with the Easterly side of Purdy Street;

THENCE Westerly and Northerly along said curve, being a curve to the right having a radius of 70 feet a distance of 91.57 feet to the Easterly side of Purdy Street;

THENCE Northerly along the Easterly side of Purdy Street 207.045 feet to the point and place of BEGINNING.

TOGETHER WITH an undivided .03431 percent interest in the Common Elements of the Property (hereinafter called the "Common Elements");

TOGETHER WITH an Easement for the continuance of all Encroachments by the Unit on any adjoining Units or Common Elements now existing as a result of construction of the Building, or which may come into existence hereafter as a result of settling or shifting of the Building, or as a result or repair or restoration of the Building or of the Unit after damage or destruction by fire or other casualty, or after a taking in Condemnation or Eminent Domain Proceedings, or by reason of an alteration to the Common Elements, so that any such Encroachments may remain so long as the Building shall stand;

TOGETHER WITH an Easement in common with the Owners of the Units to use in accordance with present use and present available facilities any pipes, wires, ducts, cables, conduits, public utility lines and other Common Elements located in any of the other Units or elsewhere on the Property and serving the Unit;

TOGETHER WITH the appurtenances and all the Estate and Rights of the Grantor in and to the Unit;

TOGETHER WITH and SUBJECT to all Easements of necessity in favor of the Unit or in favor of other Units or the Common Elements;

SUBJECT to Easements in favor of adjoining Units and in favor of the Common Elements for the continuance of all Encroachments of such adjoining Units or Common Elements on the Unit now existing as a result of construction of the Building, or which may come into existence hereafter as a result of settling or shifting of the Building, or as a result or repair or restoration of the Building or of any adjoining Unit or of the Common Elements after damage or destruction by fire or other casualty, or after a taking in Condemnation or Eminent Domain Proceedings, or by reason of an alteration to or after a taking in Condemnation or Eminent Domain Proceedings, or by reason of an alteration to the Common Elements, so that any such Encroachments may remain so long as the Building shall

Insure

- continued on next page -

United General Title Insurance Company

Exhibit 7B Defendant 2 Lien. For Common Changes page 46

# EASTERN ABSTRACT CORP.

## Title No. E-B-21459

## SCHEDULE A (continued)

stand;

SUBJECT also to an Easement in favor of the other Units to use in accordance with present use and present available facilities the pipes, wires, ducts, conduits, cables, public utility lines and other Common Elements located in the Unit or elsewhere on the Property and serving such other Units;

SUBJECT also to the Easement for the use of steam pipes, wires, conduits and lines in the Unit granted by Agreement Dated December 14, 1972 and Recorded in the Office of the Register of the City of New York in the County of the Bronx, in Reel 208 at Page 1862.

SUBJECT also to Agreement Dated December 14, 1972 and Recorded in the Office of the Register of the City of New York, County of the Bronx in Reel 208 at Page 1850.

SUBJECT also to the Provisions of the Declaration and of the By-Laws of the Condominium Recorded simultaneously with and as part of the Declaration, as the same may be Amended from time to time by Instruments Recorded in the Office of the Register of the City of New York, in the County of the Bronx, which Provisions, TOGETHER WITH any Amendments thereto, shall constitute covenants RUNNING WITH the Land and shall bind any person having at any time any Interest or Estate in the Unit, as though such Provisions were recited and stipulated at length herein;

The Grantee accepts and ratifies the Provisions of the Declaration and the By-Laws and the Rules and Regulations of the Condominium Recorded simultaneously with and as part of the Declaration and agrees to comply with all the Terms and Provisions thereof as the same may be Amended from time to time by Instruments Recorded in the Office of the Register of the City of New York, County of the Bronx.

The use for which the Unit is intended is that of Residence Only.

*Exhibit #B Defendant γ Lien for common charges page 47*

**SUBJECT TO:**

1. Terms and provisions of the Judgment of Foreclosure and Sale entered in the within action.
2. Zoning ordinances, restrictions, and regulations imposed by any governmental authority;
3. The Declaration, By-Laws and Rules and Regulations of the Parkchester North Condominium and all amendments thereto;
4. All covenants, restrictions, easements, rights, agreements, reservations of record, if any, affecting the premises;
5. Any state of facts an accurate survey would show; and
6. Occupants of the premises whose interests have been foreclosed by the foreclosure action referred to herein.

TO HAVE AND TO HOLD the premises whose herein granted unto the GRANTEE, its heirs and assigns forever.

IN WITNESS WHEREOF, The GRANTOR has hereunto set his hand and seal the date first above written.

CHARLES F. TAIBI, ESQ., Referee

STATE OF NEW YORK ) 
) ss.:
COUNTY OF BRONX )

On July 17th, 2013, before me, the undersigned, a Notary Public in and for said State, personally appeared CHARLES F. TAIBI, ESQ., personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public—State of New York

ELISABETH ALBERT
Notary Public, State of New York
No. 01AL6023829
Qualified in New York County
Commission Expires May 3, 2015

SEAL

PRESENT:

HONORABLE,

## HON. LUCINDO SUAREZ

Justice.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

At IAS Part 19 of the Supreme Court of the
State of New York, held in and for the
County of Bronx, at the Courthouse located
at 851 Grand Concourse, Bronx, New York
on the 8th day of January 2016

E*TRADE BANK, FORMERLY KNOWN AS
TELEBANK,

Plaintiff,

- v -

EMMANUEL DELVALLE A/K/A EMANUEL
DELVALLE, ADAM PLOTCH, THE BOARD OF
MANAGERS OF THE PARKCHESTER NORTH
CONDOMINIUM, "JOHN DOE" #1", to "JOHN DOE
# 10", the last 10 names being fictitious and unknown to
plaintiff, the persons or parties intended being the
persons or parties, if any having or claiming any interest
in or lien upon the mortgage premises described in the
verified complaint,.

Defendants.

Index: 380411/2013

ORDER TO SHOW
CAUSE w/TRO

Upon reading the annexed Affirmation of Adam Plotch dated January 8, 2016, the
Emergency Affirmation of Adam Plotch, dated January 8, 2016, and all exhibits annexed hereto,
let Plaintiffs, Defendants, the Referee Betty Lugo, Esq., or their attorneys, show cause at the
An IAS Part 19, Room 411
Supreme Court, Bronx County, 851 Grand Concourse Bronx, New York, on the 25th day of
January, 2016, at 9:30 am in the forenoon of that day, or as soon thereafter as counsel may be
heard, why this Court should not grant an Order:

Exhibit Ⓞ ETrade Mortgage Foreclosure documents pg-1-25

ORDERED that pending the hearing of this Order to Show Cause, ~~all actions on the part of the~~ dred *following any sale of the property herein is enjoined until further order of the court* ~~Referee, her agents, or attorneys to conduct an auction of the Property, including the auction~~ ~~scheduled for January 11, 2016, are stayed.~~

*transfer of the Referee is*

SUFFICIENT reason appearing therefor, let service of a copy of this Order and the papers upon *All parties and the Referee by overnight mail* with it was granted upon ~~Defendant, by overnight mail~~ on or before the 13th day of *January* 2016, be deemed good and sufficient service.

ENTER:

HON. LUCINDO SUAREZ
J.S.C

Exhibit Ø E Iva de Mortgage Foreclosure documents Page 1-15

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

E*TRADE BANK, FORMERLY KNOWN AS
TELEBANK,

                                        Plaintiff,                          Index: 380411/2013

         - v -

                                                                    AFFIRMATION IN
                                                                    SUPPORT OF ORDER
                                                                    TO SHOW CAUSE w/TRO
EMMANUEL DELVALLE A/K/A EMANUEL
DELVALLE, ADAM PLOTCH, THE BOARD OF
MANAGERS OF THE PARKCHESTER NORTH
CONDOMINIUM, "JOHN DOE" #1", to "JOHN DOE
# 10", the last 10 names being fictitious and uknown to
plaintiff, the persons or parties intended being the
persons or parties, if any having or claiming any interest
in or lien upon the mortgage premises described in the
verified complaint,.

                                        Defendants.

ADAM PLOTCH affirms, pursuant to CPLR 2309, under penalty of perjury, as follows:

1)      I am a defendant in this action, and as such, am fully familiar with the facts and
circumstances described herein.

2)      I submit this affirmation in support of the instant order to show cause, which
prays for an order (a) preliminarily enjoining referee Betty Lugo, or any successive referee from
selling real property known as and located at 1503 Metropolitan Ave., 7B, Bronx, NY; (b)
vacating the judgment of foreclosure and sale issued in this action, pursuant to CPLR 5015(a)(1)
and (3), on account of plaintiff's failure to comply with Real Property Actions and Proceedings
Law ("RPAPL") 1306, a condition precedent to a foreclosure action, and Plaintiff's failure to
send a demand letter in advance of commencement of this action, as required under the terms of
the mortgage whose foreclosure is sought herein; or, in the alternative, vacating the judgment of

*Exhibit B  E Trade Mortgage Foreclosure documents . pages 3-25*

4.    I pray that this Court issue a temporary restraining order against the sale of my condominium, pending a hearing of this motion.

5.    On January 7, 2016, at approximately 1:00 PM, I advised both the court-appointed Referee, Betty Lugo, Esq., and Erwin Vencer, Esq., a member of the law firm of McCabe, Conway et al., counsel to Plaintiff, that I would be bringing the instant order to show cause with temporary restraining order to the ex parte part of the Bronx County Courthouse on January 8, 2016 at 2:15 PM.

6.    I contacted Ms. Lugo's office by telephone, and emailed her directly.

7.    I did not hear back from Ms. Lugo.

8.    Mr. Vencer corresponded with me, but did not advise that he would be attending to oppose.

**WHEREFORE**, the Court is respectfully requested to issue an order:

(a)    preliminarily enjoining referee Betty Lugo, or any successive referee from selling real property known as and located at 1503 Metropolitan Ave., 7B, Bronx, NY;

(b)    vacating the judgment of foreclosure and sale issued in this action, pursuant to CPLR 5015(a)(1) and (3), on account of plaintiff's failure to comply with Real Property Actions and Proceedings Law ("RPAPL") 1306, a condition precedent to a foreclosure action, and Plaintiff's failure to send a demand letter in advance of commencement of this action, as required under the terms of the mortgage whose foreclosure is sought herein;

*or, in the alternative,*

vacating the judgment of foreclosure and sale issued in this action, pursuant to CPLR 5015(a)(3) and (4), on account of: (i) plaintiff's failure to comply with CPLR 3215(g)(1)

*Exhibit 8 Etrade Mortgage Foreclosure documents Page 4-25*

(requiring plaintiff to provide me with notice of its motion for a judgment of foreclosure and sale); (ii) Plaintiff's failure to comply with RPAPL 1331 (requiring plaintiff to file a valid notice of pendency at least twenty days before entry of the judgment of foreclosure and sale); (iii) Plaintiff's failure to provide me with the referee's report, notice of entry of the judgment of foreclosure and sale, and the notice of sale, thereby rendering those documents and any subsequent documents in this case of no effect on me; (iv) Plaintiff's failure to comply with CPLR 3215(f) (requiring plaintiff to provide proof of the merit of its claim before a judgment of foreclosure is issued); (iv) Plaintiff's failure to comply with RPAPL 1304 (requiring plaintiff to provide proof of its having timely sent certain pre-foreclosure notices, which notices are a condition precedent to foreclosure) and (v) plaintiff's failure to provide me with notice of entry of the Order of Reference, judgment of foreclosure and sale, and notice of sale; and allowing me to submit an Answer and defend this action; and

(c)     for such other relief as this Court may deem just and proper.

ADAM PLOTCH
Non-party movant DEFENDANT
95 W 95 Street
New York, NY 10025
212-787-4888
adampaulplo@gmail.com

Dated: JANUARY 8, 2016
~~December 31, 2015~~
New York, NY

On 1—8-16, before me, the undersigned, personally appeared _Adam Plotch_ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed the the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual executed the instrument.

JASON VANCE
NOTARY PUBLIC, State of New York
No. 04VA6161023
Qualified in Bronx County
Commission Expires Feb. 8, 20__

Exhibit 8 E Trade Mortgage Foreclosure documents page-5-75

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

BOARD OF MANAGERS OF 100 UNITED NATIONS
PLAZA CONDOMINIUM, ON BEHALF OF THE
UNIT OWNERS,

                            Plaintiff,                          Index: 152649/2013

        - v -                                          **EMERGENCY
                                                       AFFIRMATION IN
                                                       SUPPORT OF ORDER TO
ANDROMEDA INVESTMENTS CO. LTD., and                    SHOW CAUSE w/TRO AND
ANNA K. ATHINEOS.                                      AFFIRMATION OF
                                                       COMPLIANCE WITH 22
                                                       NYCRR 202.7(f)**
                            Defendants.

ADAM PLOTCH affirms, pursuant to CPLR 2309, under penalty of perjury, as follows:

1.      I am the successful bidder at the foreclosure sale that was held pursuant to a
judgment of foreclosure and sale in this action. As such, I am fully familiar with the facts and
circumstances set forth herein.

1)      I submit this emergency affirmation in support of the instant order to show cause,
with temporary restraining order, (a) preliminarily enjoining referee Betty Lugo, or any
successive referee from selling real property known as and located at 1503 Metropolitan Ave.,
7B, Bronx, NY; (b) vacating the judgment of foreclosure and sale issued in this action, pursuant
to CPLR 5015(a)(1) and (3), on account of plaintiff's failure to comply with Real Property
Actions and Proceedings Law ("RPAPL") 1306, a condition precedent to a foreclosure action,
and Plaintiff's failure to send a demand letter in advance of commencement of this action, as
required under the terms of the mortgage whose foreclosure is sought herein; or, in the
alternative, vacating the judgment of foreclosure and sale issued in this action, pursuant to CPLR

Exhibit 8  E Tra be Mortgage Foreclosure documents pages 6 -75

5015(a)(3) and (4), on account of: (i) plaintiff's failure to comply with CPLR 3215(g)(1) (requiring plaintiff to provide me with notice of its motion for a judgment of foreclosure and sale); (ii) Plaintiff's failure to comply with RPAPL 1331 (requiring plaintiff to file a valid notice of pendency at least twenty days before entry of the judgment of foreclosure and sale); (iii) Plaintiff's failure to provide me with the referee's report, notice of entry of the judgment of foreclosure and sale, and the notice of sale, thereby rendering those documents and any subsequent documents in this case of no effect on me; (iv) Plaintiff's failure to comply with CPLR 3215(f) (requiring plaintiff to provide proof of the merit of its claim before a judgment of foreclosure is issued); (iv) Plaintiff's failure to comply with RPAPL 1304 (requiring plaintiff to provide proof of its having timely sent certain pre-foreclosure notices, which notices are a condition precedent to foreclosure) and (v) plaintiff's failure to provide me with notice of entry of the Order of Reference, judgment of foreclosure and sale, and notice of sale; and allowing me to submit an Answer and defend this action; and (c) for such other relief as this Court may deem just and proper.

2.     The instant motion constitutes an emergency, because real property I own is slated to be sold at auction on January 11, 2016.

3.     As further set forth in the annexed affirmation of Adam Plotch, despite my having appeared in this action, I was not served with a copy of a notice of motion for a judgment of foreclosure, or of the Referee's Report and Oath of sums allegedly due, nor of the judgment of foreclosure and sale, nor of the notice of sale. As such, it is respectfully submitted that the Court was without jurisdiction to issue a judgment of foreclosure and sale, and it is concomitantly without jurisdiction to conduct a sale of my condominium.

Exhibit 8 ETrade Mortgage Foreclosure documents pages 7-8

(a)     preliminarily enjoining referee Betty Lugo, or any successive referee from selling real property known as and located at 1593 Metropolitan Ave., 7B, Bronx, NY;

(b)     vacating the judgment of foreclosure and sale issued in this action, pursuant to CPLR 5015(a)(1) and (3), on account of plaintiff's failure to comply with Real Property Actions and Proceedings Law ("RPAPL") 1306, a condition precedent to a foreclosure action, and Plaintiff's failure to send a demand letter in advance of commencement of this action, as required under the terms of the mortgage whose foreclosure is sought herein;

*or, in the alternative,*

vacating the judgment of foreclosure and sale issued in this action, pursuant to CPLR 5015(a)(3) and (4), on account of: (i) plaintiff's failure to comply with CPLR 3215(g)(1) (requiring plaintiff to provide me with notice of its motion for a judgment of foreclosure and sale); (ii) Plaintiff's failure to comply with RPAPL 1331 (requiring plaintiff to file a valid notice of pendency at least twenty days before entry of the judgment of foreclosure and sale); (iii) Plaintiff's failure to provide me with the referee's report, notice of entry of the judgment of foreclosure and sale, and the notice of sale, thereby rendering those documents and any subsequent documents in this case of no effect on me; (iv) Plaintiff's failure to comply with CPLR 3215(f) (requiring plaintiff to provide proof of the merit of its claim before a judgment of foreclosure is issued); (iv) Plaintiff's failure to comply with RPAPL 1304 (requiring plaintiff to provide proof of its having timely sent certain pre-foreclosure notices, which notices are a condition precedent to foreclosure) and (v) plaintiff's failure to provide me with notice of entry of the Order of Reference, judgment of foreclosure and sale, and notice of sale; and allowing me to submit an Answer and defend this action; and

(c)     for such other relief as this Court may deem just and proper.

Exhibit E Trade mortgage Foreclosure documents page 8-75

foreclosure and sale issued in this action, pursuant to CPLR 5015(a)(3) and (4), on account of: (i) plaintiff's failure to comply with CPLR 3215(g)(1) (requiring plaintiff to provide me with notice of its motion for a judgment of foreclosure and sale); (ii) Plaintiff's failure to comply with RPAPL 1331 (requiring plaintiff to file a valid notice of pendency at least twenty days before entry of the judgment of foreclosure and sale); (iii) Plaintiff's failure to provide me with the referee's report, notice of entry of the judgment of foreclosure and sale, and the notice of sale, thereby rendering those documents and any subsequent documents in this case of no effect on me; (iv) Plaintiff's failure to comply with CPLR 3215(f) (requiring plaintiff to provide proof of the merit of its claim before a judgment of foreclosure is issued); (iv) Plaintiff's failure to comply with RPAPL 1304 (requiring plaintiff to provide proof of its having timely sent certain pre-foreclosure notices, which notices are a condition precedent to foreclosure) and (v) plaintiff's failure to provide me with notice of entry of the Order of Reference, judgment of foreclosure and sale, and notice of sale; and allowing me to submit an Answer and defend this action; and (c) for such other relief as this Court may deem just and proper.

## BACKGROUND

3)      I am the sole owner, in fee simple, of the real property that is the subject of this foreclosure action -- to wit, 1503 Metropolitan Ave., unit 7B, Bronx, NY (Block/Lot 3944/2558) (the "Property"). A true and correct copy of the deed (the "Deed") evidencing my ownership of the Property, and duly recorded with the City Register on November 16, 2012 under CRFN 2012000450254, is annexed hereto as Exhibit "A".

4)      The Deed was issued to me by Howard Vargas, Esq., a Referee appointed by the Bronx County Supreme Court.

Exhibit 8 ETrade Mortgage foreclosure documents page 9 - 38

5)   I am not a mortgagor, and owe no money to Plaintiff E*Trade Bank

6)   Upon information and belief, on or about December 23, 2015, Plaintiff filed a "Notice of Sale" with the Bronx County Clerk. The Notice of Sale provides that the Property will be sold at a public auction on January 11, 2016 (the "Auction"). A true and correct copy of the Notice of Sale, as it appears in the records of the Bronx County Clerk, is attached hereto as Exhibit "B".

7)   If the sale is allowed to proceed, I will be permanently divested of my interest in the Property, and thereby suffer irreparable harm. Therefore, the instant order to show cause constitutes an emergency.

8)   I have not been served with a copy of the Notice of Sale, and there is no affidavit of service in the record suggesting that Plaintiff has, in fact, served me therewith; I found the Notice of Sale by rummaging through the records of the Bronx County Clerk.

9)   As a threshold matter, inasmuch as I am a defendant in this action who has appeared, and who has not waived service of any papers, Plaintiff was required to serve me with the Notice of Sale in advance of the Auction. CPLR 2103. Plaintiff's failure to have served me with the Notice of Sale "in the ordinary manner in which papers are to be served upon a party in a pending action (see CPLR 2103)" necessitates cancellation of the January 11, 2016 Auction. Shaw v Russell 60 NY 2d 922 (1983).

10)   In addition to failing to serve the Notice of Sale, Plaintiff failed to comply with a number of other conditions precedent to foreclosure that are mandated by statute and controlling caselaw. Accordingly, this Court is respectfully requested to cancel the Auction, vacate the judgment of foreclosure and sale, and dismiss the action. In the alternative, I pray that this Court

Exhibit 8 Etrade Mortgage forclosure documents page 16-78

cancel the Auction, vacate the judgment of foreclosure and sale, and provide me with an opportunity to submit an Answer.

## PLAINTIFF FAILED TO COMPLY WITH RPAPL 1306

11)     As further set forth in Point I(A) of the annexed memorandum of law, Plaintiff failed to comply with RPAPL 1306. Accordingly, the action must be dismissed.

12)     RPAPL 1306 requires the plaintiff in a judicial foreclosure action to file with the superintendent of financial services (the "Superintendent"). The statute mandates that such filing be completed *prior to* commencing a foreclosure action. Compliance with the directives of RPAPL 1306, according to both the plain text of the statute and controlling caselaw, is a "condition precedent" to any mortgage foreclosure proceeding. RPAPL 1306(1).

13)     An exhaustive search of the record in this action reveals that Plaintiff has not filed an affidavit attesting to when, if ever, the requisite filing with the superintendent of financial services was done.

14)     The record does, however, contain a "Proof of Filing Statement," ostensibly provided by the New York State Banking Department, attesting to the timing and content of the RPAPL 1306 filing. A true and correct copy of the Proof of Filing Statement is attached hereto as Exhibit "C".

15)     The Proof of Filing Statement unequivocally provides that the statutorily required filing was done on September 13, 2013, some five months *after* this action was commenced. (See Complaint, attached hereto as Exhibit "D", and dated April 10, 2013. As noted above, RPAPL 1306 mandates that the filing with the Superintendent be done *prior* to commencement of a foreclosure action, as a condition precedent thereto.

Exhibit 8 E Trade Mortgage Foreclosure Documents page A-25

16)     The consequences of an untimely RPAPL 1306 filing have been considered by the appellate division, and by numerous nisi prius courts throughout the State, including the Bronx County Supreme Court. Their determinations of the various courts have been uniform and consistent –failure to *timely* file the RPAPL 1306 notice necessitates dismissal of the action.

17)     In addition to not having timely filed with the Superintendent, the Proof of Filing Statement further demonstrates that Plaintiff neglected to include much of the information that RPAPL 1306 mandates that the filing, "at a minimum", contain, including the "amount claimed as due and owing on the mortgage" and the last known telephone number of the borrower.  (See RPAPL 1306(2)).

18)     Having failed to comply with a condition precedent to foreclosure, this action must be dismissed.

## PREDICATE NOTICES, REQUIRED TO BE MAILED AS A CONDITION PRECEDENT TO FORECLOSURE, WERE NOT TIMELY MAILED

19)     A true and correct copy of the mortgage (the "Mortgage") whose foreclosure is sought in this action is attached hereto as Exhibit "E".

20)     Paragraph 22 of the Mortgage requires Plaintiff to send a certain demand notice (the "Demand Letter") to the mortgagor *prior to* acceleration of the Mortgage, and *prior to* commencement of a foreclosure proceeding.

21)     Paragraph 22 provides, inter alia, that the Demand Letter must provide the mortgagor with a certain amount of time to cure *before* the mortgagee can accelerate the mortgage and commence foreclosure proceedings.

22)     In support of its motion for a judgment and foreclosure and sale, Plaintiff submitted to this Court an affidavit in which the affiant, one Dara Foye, conceded the

Exhibit 8 ETrade Mortgage Foreclosure documents page 17-75

applicability of Paragraph 22, and the requirement to mail the Demand Letter (the "Foye Affidavit"). A true and correct copy of the Foye Affidavit, as it appears in the record of the Bronx County Clerk, is attached hereto as Exhibit "F". (See Paragraph 9 thereof.)

23)     The Foye Affidavit further concedes, however, that the Demand Letter was only sent to the mortgagor on September 13, 2013, some seven months *after* the commencement of this action.

24)     Accordingly, a condition precedent to acceleration and commencement of a foreclosure proceeding was not met. The action must therefore be dismissed.

25)     Plaintiff has also submitted a signed statement from its attorney, Donna Akinrele, Esq. (the "Akinrele Statement.") A true and correct copy of the Akinrele Statement is attached hereto as Exhibit "G".

26)     In Paragraph 6 of the Akinrele Statement, Ms. Akinrele claims that the mortgagor defaulted beginning on July 1, **2012**.

27)     In the very next paragraph of the Akinrele Statement, however, Ms. Akinrele claims that the 30-day notice of default was mailed on November 3, **2008** – nearly four years *prior* to the actual default.

28)     Neither the Foye Affidavit nor the Akinrele Statement give any indication that the mortgagor was provided with timely notice of default and acceleration – a prerequisite to this foreclosure proceeding. The conflicting affidavits are one of many indications that this action is a complete mess, and that Plaintiff was, accordingly, not entitled to a judgment of foreclosure and sale.

Exhibit 0   ETra la a Mortgage Foreclosure documents   page 13-85

29)   Because there is no indication in the record of Plaintiff's having complied with the predicate requirement to provide a notice of default to the mortgagor, this action cannot stand, and should be dismissed.

30)   Although I am not the mortgagor, recent First Department law expressly provides that the owner of a property that is subject to a mortgage foreclosure proceeding has standing to "challenge any element of plaintiff's claims" even if the owner is not the mortgagor. Deutsche Bank Natl. Trust Co. v Tanibajeva 132 AD3d 430 (1 Dep't 2015). "The principle of contract law that a person who was not a party to the contract or a third-party beneficiary thereof cannot assert a claim for breach of that contract" has no applicability to a mortgage foreclosure proceeding in which the owner is attempting to defend against foreclosure of his property, even if the owner is not a party to the mortgage. Wellington v Financial Freedom Acquisition LLC 132 AD3d 506 (1 Dep't 2015).

## NO VALID NOTICE OF PENDENCY EXISTS

31)   As further set forth in Point II(A) of the annexed memorandum of law, there is no valid notice of pendency filed against the Property. Accordingly, it is respectfully submitted that the judgment of foreclosure and sale should not have been rendered, and, accordingly, must now be vacated.

32)   On or about April 16, 2013, Plaintiff filed a notice of pendency in this action (the "Notice of Pendency"). A true and correct copy of the Notice of Pendency is attached hereto as Exhibit "II".

33)   "A notice of pendency is effective only if, within thirty days after filing, a summons is served upon the defendant" CPLR 6512.

Exhibit 8. E Trade Mortgage Foreclosure documents page 14-25

34)   I was served with the summons and complaint in this action on July 16, 2013 – over *ninety* (90) days after the Notice of Pendency was filed. A true and correct copy of the affidavit of service of the summons and complaint (the "Affidavit of Service") is attached hereto as Exhibit "I".

35)   A Notice of Pendency is effective only if a defendant with an *ownership interest* in the property that is the subject of the foreclosure action is served with a summons within the statutory thirty-day period.

36)   As evidenced by the Deed (Ex. A) I am the sole owner of the Property. As evidenced by the Affidavit of Service (Ex. I), I was not served with a summons within thirty days of the filing of the Notice of Pendency.

37)   Accordingly, the Notice of Pendency is invalid and ineffective.

38)   Notwithstanding the same, on or about October 15, 2015, this Court issued a judgment of foreclosure and sale (the "Judgment of Foreclosure.") A true and correct copy of the Judgment of Foreclosure and Sale is attached hereto as Exhibit "J".

39)   Inasmuch as no valid notice of pendency had been filed at least twenty days prior to the issuance of the Judgment of Foreclosure, it is respectfully submitted that the Judgment of Foreclosure must be vacated.

## PLAINTIFF FAILED TO PROVIDE ME WITH NOTICE OF THE MOTION FOR THE JUDGMENT OF FORECLOSURE

40)   As further set forth in Point II(B) of the annexed memorandum of law, Plaintiff was required to provide me with notice of its motion for a judgment of foreclosure and sale. CPLR 3215(g)(1). I received no such notice, and the record is devoid of any affidavit of service or claim by Plaintiff that the statutorily required notice was sent to me. Accordingly, the Court

Exhibit 0   E Trade Mortgage Foreclosure documents Page 15-25

was without jurisdiction to grant Plaintiff's motion for a judgment of foreclosure and sale, and the Judgment of Foreclosure should therefore be vacated.

41)   I was originally represented in this action by the law office of Crawford & Bringslid Attorneys at Law P.C. (hereinafter the "Crawford Firm"). A true and correct copy of a notice of appearance filed by the Crawford Firm on my behalf is attached hereto as Exhibit "K".

42)   On or about July 9, 2015, a fully signed, executed, and acknowledged consent to change attorney document ("Consent to Change Attorney") was duly filed with the Court and mailed to Plaintiff's counsel, in accordance with CPLR 321(b). A true and correct copy of the Consent to Change Attorney is attached hereto as Exhibit "L". An affirmation from Allyn Crawford, Esq., a partner of the Crawford Firm, attesting to his having mailed the Consent to Change Attorney to Plaintiff's counsel, and of having mailed at least one additional letter to Plaintiff's counsel reminding them of his having been substituted out, is attached hereto as Exhibit "M".

43)   The Consent to Change Attorney provides that I was thereby substituted as Defendant Pro Se, "in place and instead of" the Crawford Firm.

44)   Notwithstanding the same, I received no notice from Plaintiff as to any subsequent matters in this case.

45)   According to the records of the Bronx County Clerk, on or about October 13, 2015, Plaintiff moved for a judgment of foreclosure and sale. A true and correct copy of Plaintiff's notice of motion for judgment of foreclosure and sale (the "Notice of Motion"), as it appears in the records of the Bronx County Clerk, is attached hereto as Exhibit "N".

46)   I did not receive a copy of the Notice of Motion, nor of any supporting documents thereto.

Exhibit O ETrade Mortgage Foreclosure documents page 16-25

47)     Both the Notice of Motion, and the affidavit of service of the Notice of Motion (the "Affidavit of Service of the Notice of Motion") provide that the Notice of Motion (and supporting exhibits) were mailed to Allyn Crawford, not to me. A true and correct copy of Affidavit of Service of the Notice of Motion are attached hereto as Exhibit "O".

48)     The Affidavit of Service of the Notice of Motion provides that the Notice of Motion was mailed to Mr. Crawford on September 1, 2015 – nearly two months after Plaintiff's counsel had been advised that Mr. Crawford was no longer representing me in this case.

49)     Accordingly, any service of the Notice of Motion on Mr. Crawford was a nullity.

50)     Pursuant to CPLR 3215(g)(1), Plaintiff was required to serve me with a copy of a notice of motion for a judgment of foreclosure and sale *prior to* the motion date. Upon information and belief, Plaintiff failed to do so.

51)     Failure to comply with CPLR 3215(g)(1) is a jurisdictional defect that deprives the Court of authority to grant a judgment of foreclosure and sale. Where such a judgment is nonetheless issued, it must be vacated.

## PLAINTIFF FAILED TO PROVIDE ME WITH THE REFEREE'S REPORT, NOTICE OF ENTRY OF THE JUDGMENT OF FORECLOSURE, AND NOTICE OF SALE

*Plaintiff Failed to Serve Me with a Copy of the Judgment of Foreclosure*

52)     Notwithstanding Plaintiff's failure to serve me with the Notice of Motion, the Bronx County Clerk's records show that this Court issued the Judgment of Foreclosure on October 15, 2015 (Ex. J.)

53)     I was never served with a copy of the Judgment of Foreclosure, or with notice of entry thereof.

Exhibit B E Trade mortgage Foreclosure documents page 17-45

54)   According to an affidavit of service of the notice of entry of final judgment of foreclosure and sale filed with the Court ("Affidavit of Service of Notice of Entry"), a notice of entry of the Judgment of Foreclosure (the "Notice of Entry") was mailed to Mr. Crawford (among others) on December 16, 2015. A true and correct copy of the Affidavit of Service of Notice of Entry, as it appears in the records of the Bronx County Clerk, is attached hereto as Exhibit "P". A true and correct copy of the Notice of Entry, as it appears in the records of the Bronx County Clerk, is attached hereto as Exhibit "Q".

55)   The date on which Mr. Crawford was allegedly mailed the Notice of Entry, December 16, 2015, was more than five months *after* Mr. Crawford had provided Plaintiff's counsel with a copy of the duly filed Consent to Change Attorney, which Consent to Change Attorney provided that Mr. Crawford was no longer representing me in this case. (See Ex. L.)

56)   Inasmuch as Mr. Crawford was not my attorney at the time the Notice of Entry was allegedly served on him, such service was a nullity that had no effect on me.

57)   The Affidavit of Service of Notice of Entry contains no indication that Plaintiff served me with a copy of the Notice of Entry, or of the Foreclosure Judgment. (Ex. P.)

58)   The face of the Notice of Entry also contains no indication that Plaintiff served me with a copy of the Notice of Entry, or of the Foreclosure Judgment. (Ex. Q.)

59)   Accordingly, and as further set forth in Point II(C) of the annexed memorandum of law, the Foreclosure Judgment may not be enforced against me. Home Sav. Bank v Chiola, 203 AD2d 525 (2 Dep't 1994); Redfield v Critchley, 277 NY 336 (1938); Lenders Capital LLC v Ranu Realty Corp., 99 AD3d (1 Dep't 2012), Jordon v Sharpe, 92 AD2d 946 (3 Dep't 1983).

*Plaintiff Failed to Serve Me With A Copy of the Notice of Sale*

Exhibit 8 ETrade Mortgage Foreclosure documents page 18-25

54)     According to an affidavit of service of the notice of entry of final judgment of foreclosure and sale filed with the Court ("Affidavit of Service of Notice of Entry"), a notice of entry of the Judgment of Foreclosure (the "Notice of Entry") was mailed to Mr. Crawford (among others) on December 16, 2015. A true and correct copy of the Affidavit of Service of Notice of Entry, as it appears in the records of the Bronx County Clerk, is attached hereto as Exhibit "P". A true and correct copy of the Notice of Entry, as it appears in the records of the Bronx County Clerk, is attached hereto as Exhibit "Q".

55)     The date on which Mr. Crawford was allegedly mailed the Notice of Entry, December 16, 2015, was more than five months *after* Mr. Crawford had provided Plaintiff's counsel with a copy of the duly filed Consent to Change Attorney, which Consent to Change Attorney provided that Mr. Crawford was no longer representing me in this case. (See Ex. L.)

56)     Inasmuch as Mr. Crawford was not my attorney at the time the Notice of Entry was allegedly served on him, such service was a nullity that had no effect on me.

57)     The Affidavit of Service of Notice of Entry contains no indication that Plaintiff served me with a copy of the Notice of Entry, or of the Foreclosure Judgment. (Ex. P.)

58)     The face of the Notice of Entry also contains no indication that Plaintiff served me with a copy of the Notice of Entry, or of the Foreclosure Judgment. (Ex. Q.)

59)     Accordingly, and as further set forth in Point II(C) of the annexed memorandum of law, the Foreclosure Judgment may not be enforced against me. Home Sav. Bank v Chiola, 203 AD2d 525 (2 Dep't 1994); Redfield v Critchley, 277 NY 336 (1938); Lenders Capital LLC v Ranu Realty Corp., 99 AD3d (1 Dep't 2012), Jordon v Sharpe, 92 AD2d 946 (3 Dep't 1983).

*Plaintiff Failed to Serve Me With A Copy of the Notice of Sale*

Exhibit B ETrade Mortgage foreclosure documents page 18-25

60)    The County Clerk's records indicate that Plaintiff filed the Notice of Sale" on December 23, 2015, indicating that the Property is to be sold at public auction on January 11, 2016. (Ex. B.)

61)    I was never served with a copy of the Notice of Sale.

62)    The Notice of Sale is filed along with an affidavit of service of the notice of sale ("Affidavit of Service of Notice of Sale.") A true and correct copy of the Affidavit of Service of the Notice of Sale, as it appears in the records of the Bronx County Clerk, is attached hereto as Exhibit "R".

63)    According to the Affidavit of Service of the Notice of Sale, the Notice of Sale was mailed to Mr. Crawford on December 14, 2015.

64)    The date on which Mr. Crawford was allegedly mailed the Notice of Sale, December 14, 2015, was exactly five months *after* Mr. Crawford had provided Plaintiff's counsel with a copy of the duly filed Consent to Change Attorney, which Consent to Change Attorney provided that Mr. Crawford was no longer representing me in this case.

65)    Inasmuch as Mr. Crawford was not my attorney at the time the Notice of Sale was allegedly served on him, such service was a nullity that had no effect on me.

66)    The Affidavit of Service of the Notice of Sale contains no indication that Plaintiff served me with a copy of the Notice of Sale. (Ex. R.)

67)    The face of the notice of sale also contains no indication that Plaintiff served me with a copy of the Notice of Sale. (Ex. B).

68)    Accordingly, and as further set forth in Point II(C) of the annexed memorandum of law, because service of a notice of sale on a defendant who has appeared is a condition

Exhibit 8 Etrade Mortgage Foreclosure document page 19-75

precedent to a foreclosure sale, the Auction slated for January 11, 2016 may not proceed. Shaw v Russell 60 NY2d 922 (1983).

*Plaintiff Failed to Serve Me with a Copy of the Referee's Oath*

69)  The Bronx County Clerk's records indicate that Plaintiff filed a document entitled Referee's Report. A true and correct copy of the Referee's Oath and Report, as it appears in the records of the Bronx County Clerk, is attached hereto as Exhibit "S".

70)  As an appearing defendant I was entitled to receive a copy of the Referee's Oath and Report. Pol-Tek Indus. v Panzarella, 227 AD2d 992 (4 Dep't 1996).

71)  However, I was never served with a copy of the Referee's Oath and Report. There is no affidavit of service in the record indicating that I was served with the Referee's Oath and Report.

72)  The Referee's Oath and Report contains a computation of monies purportedly owed to Plaintiff. Upon information and belief, this Court's issuance of the Foreclosure Judgment was predicated on confirmation of the Referee's Report.

73)  Because I was never served with a copy of the Referee's Report, subsequent orders that devolve therefrom are null and void as against me.

74)  Had I been served with a copy of the Referee's Oath and Report, I would have objected thereto, as the Referee admits therein that she did not base her determination on any examination of Plaintiff's records or evidence of default, but instead on the affidavit of a person who admits she is not an employee of Plaintiff. No business records were submitted, nor were bases for exemptions from the hearsay rule established. Accordingly, the affidavit of a person

Exhibit E Trade Mortgage Foreclosure documents Page 80.78

who is not employed by Plaintiff is not something on which a referee's computation of sums purportedly owed to Plaintiff can be based.

75)     The Court is respectfully reminded that a defendant who has defaulted in an action is nonetheless permitted to contest the extent of liability. *Paulus v Christopher Vacirca*, 128 A.D.3d 116 (2 Dep't 2015*); Charles F. Winson Gems, Inc. v D. Gumbiner, Inc.* 85 AD2d 69 (1 Dep't 1982).

### PLAINTIFF FAILED TO COMPLY WITH CPLR 3215(f)

76)     As further set forth in Point II(C) of the annexed memorandum of law, CPLR 3215(f) requires an applicant for a default judgment to file an affidavit containing proof of the facts constituting the claim, the default, and the amount due. Caselaw further provides that such affidavit be made by a person with personal knowledge of the facts, or by someone relying on business records that are admissible under an exception to the hearsay rule.

77)     An exhaustive search of the record reveals that Plaintiff submitted no affidavit whatsoever from any employee of the Plaintiff. Accordingly, it did not meet its burden under CPLR 3215(f).

### PLAINTIFF FAILED TO COMPLY WITH RPAPL 1304

78)     As further set forth in Point II(D) of the annexed memorandum of law, RPAPL 1304 requires that a certain notice be sent at least 90 days prior to the commencement of a foreclosure proceeding.

79)     Controlling caselaw further provides that the plaintiff in a foreclosure action provide proof of having timely complied with the requirements of the statute.

Exhibit 8 ITrade Mortgage Forclosure Documents page 71-75

*Exhibit 9   11/2/19 Parkchester North Condominium Cond Questionaire Page 2-2*

14. Does the unit owner own the lot or land below the unit or an undivided interest in common land?
( ) lot (✓) undivided interest.

15. Do the unit owners have sole ownership interest in and the right to the use of the project facilities (✓) YES ( ) NO.
If NO, please explain:_____

16. Does the developer retain ownership interest in any of the facilities or common area? ( ) YES (✓) NO.  If YES, please explain:_____

17. Do the project documents allow the units to be leased or rented for less than a 30-day period? ( ) YES (✓) NO.

18. Are there any other restrictions relating to the term of any lease or rental agreement? (✓) YES ( ) NO.  If YES, describe restrictions: _Waiver of Right of First Refusal_

19. Has voting control of the Board of Directors been turned over from the builder and/or developer?
(✓) YES, control was turned over in ___05/1972___ (Month/Year).
( ) NO, the anticipated date for the transfer of control is _____ (Month/Year).

20. The Owners' Association fiscal year is from _____ to _____ (Month/Year).

21. How many budget cycles have been controlled by the unit owners as a majority (as opposed to the developer)?
(✓) NONE      ( ) ONE      ( ) TWO      ( ) MORE THAN TWO

22. The unit assessment/common charges for all units are:
( ) The same, the assessment is $ _____ per month.
(✓) Not the same, the assessments range from $ _309.98_ to $ _1,000.92_ per month.

23. Do the unit assessments include any charges for unit utilities? ( ) YES (✓) NO. If YES, please indicate which utilities:_____

24. As of the start of the current fiscal year, how many are delinquent more than thirty (30) days in their unit assessment charges?
# _50_ . Total amount of outstanding delinquent charges is $ _1942_

25. Are there any special assessments now approved, or have there been any in the past two years? ( ) YES (✓) NO. If YES, describe the nature / purpose, the total amount, and the per unit charge. Nature / Purpose of assessment:_____
_____ Total amount of assessment: $ _____ Per unit charge: $ _____.

26. Indicate if the project is (✓) Self-Managed, or ( ) Managed by a management firm.

27. If a management firm manages the project, is it related to the developer? ( ) YES (✓) NO. If YES, describe the nature of the relationship:_____
Name:_____ Company Name:_____
Address:_____ Telephone #:_____

28. If an Owners' Association employee manages the project, supply the following contact information:
Name:_____ Title:_____
Mailing Address:_____ Telephone #:_____

### CERTIFICATION

I, the undersigned, certify that to the best of my knowledge and belief, the information and statements contained on this form and all attachments are true and correct.

| | |
|---|---|
| _Tiffany Watson_ | _01/17/19_   _917-1034-5207_ |
| Signature of Association Representative or Preparer | Date   Telephone Number |
| _Tiffany Watson_ | _Board Secretary_ |
| Name of Association Representative or Preparer | Title |
| | |
| Preparer's Company Name and Address | |

WHEREFORE this Court is respectfully requested to grant this order to show cause in its entirety,

(a)     preliminarily enjoining referee Betty Lugo, or any successive referee from selling real property known as and located at 1503 Metropolitan Ave., 7B, Bronx, NY;

(b)     vacating the judgment of foreclosure and sale issued in this action, pursuant to CPLR 5015(a)(1) and (3), on account of plaintiff's failure to comply with Real Property Actions and Proceedings Law ("RPAPL") 1306, a condition precedent to a foreclosure action, and Plaintiff's failure to send a demand letter in advance of commencement of this action, as required under the terms of the mortgage whose foreclosure is sought herein;

*or, in the alternative,*

vacating the judgment of foreclosure and sale issued in this action, pursuant to CPLR 5015(a)(3) and (4), on account of: (i) plaintiff's failure to comply with CPLR 3215(g)(1) (requiring plaintiff to provide me with notice of its motion for a judgment of foreclosure and sale); (ii) Plaintiff's failure to comply with RPAPL 1331 (requiring plaintiff to file a valid notice of pendency at least twenty days before entry of the judgment of foreclosure and sale); (iii) Plaintiff's failure to provide me with the referee's report, notice of entry of the judgment of foreclosure and sale, and the notice of sale, thereby rendering those documents and any subsequent documents in this case of no effect on me; (iv) Plaintiff's failure to comply with CPLR 3215(f) (requiring plaintiff to provide proof of the merit of its claim before a judgment of foreclosure is issued); (iv) Plaintiff's failure to comply with RPAPL 1304 (requiring plaintiff to provide proof of its having timely sent certain

Exhibit8 ETrade Mortgage Foreclosure documents page 24-25

pre-foreclosure notices, which notices are a condition precedent to foreclosure) and (v)

plaintiff's failure to provide me with notice of entry of the Order of Reference, judgment

of foreclosure and sale, and notice of sale; and allowing me to submit an Answer and

defend this action; and

(c)     for such other relief as this Court may deem just and proper.

ADAM PLOTCH
Defendant
95 W 95 Street
New York, NY 10025
212-787-4888
adampaulplo@gmail.com

Dated:     January 8, 2016
           New York, NY

On ___1-8-16___, before me, the undersigned, personally appeared Adam Plotch
personally known to me or proved to me on the basis of satisfactory evidence to be the
individual whose name is subscribed the the within instrument and acknowledged to me that
he executed the same in his capacity, and that by his signature on the instrument, the
individual executed the instrument.

Notary Public

JASON VANCE
NOTARY PUBLIC, State of New York
No. 04VA6161023
Qualified in Bronx County
Commission Expires Feb. 8, 20__

Exhibit 0  ETrade mortgage foreclosure documents  page 75.85

80)    Plaintiff has submitted no fewer than three signed statements from its attorneys,

and one sworn affidavit from another individual, all attesting to the applicability of RPAPL 1304

to this action. A true and correct copy of the Certificate of Merit signed by Jonathan Pollack,

Esq., is attached hereto as Exhibit "T" (see paragraph 2 thereof.) A true and correct copy of the

affidavit of Megan Harris, Esq., (the "Harris Affidavit") is attached hereto as Exhibit "U" (see

paragraph 2 thereof). See also the Foye Affidavit (Ex. F, Par. 12) and the Akinrele Statement

(Ex. G, Par. 8.)

81)    Notwithstanding the foregoing, Plaintiff has provided no evidence, in the form of

an affidavit of service or otherwise, of having served the notice required by RPAPL 1304. None

of the foregoing affidavits, statements and certificates provide any information from anyone with

personal knowledge as to how and when the RPAPL 1304 notice were sent[1].

82)    The full gamut of affidavits of service submitted by Plaintiff in support of its

motion for summary and judgment and judgment of foreclosure are attached hereto as Exhibit

"V". Not one makes any mention of having served the RPAPL 1304 notice.

83)    Caselaw provides that Plaintiff has the burden of proving service of the RPAPL

1304 notice. Having failed to do so, it is respectfully submitted that, at a minimum, the judgment

of foreclosure and sale must be vacated. If Plaintiff cannot prove compliance with RPAPL 1304,

the action must be dismissed altogether.


REASONABLE EXCUSE FOR DEFAULT


---

[1] The Harris affidavit makes reference to a "Blaine Affidavit" but no such affidavit appears in the
record.

Exhibit 8 E Trade Mortgage Foreclosure documents page 73-75

84)    Although I stridently maintain that the jurisdictional defects and mistakes made by Plaintiff in this action obviate the need to present a "reasonable excuse" for default, I note that until I discharged Mr. Crawford in July of 2015, I had no control over how my defense of this action was handled.

85)    The strategy employed by the Crawford firm – specifically, filing a notice of appearance in lieu of an answer – is not one that I would have used.

86)    But the matter was out of my hands. When I acquired the Property in September, 2012, I purchased title insurance from Old Republic National Title Insurance Company, through Jewett Abstract Corp ("Jewett"). A copy of the first two pages of my title policy are attached hereto as Exhibit "W". (I no longer have the rest of the policy.)

87)    After this action was commenced, I advised Jewett of the same.

88)    I was then informed that the Crawford Firm had been assigned to handle my case. I had no control or say in the selection of my attorney, or in the strategy that he employed.

89)    As this motion hopefully demonstrates, I have legitimate defenses to this action. Had I not been allowed to represent myself, or to select my own counsel, instead of being assigned an attorney who was not of my choosing, I would have asserted these legitimate defenses timely.

90)    In the six months since Mr. Crawford was discharged, I have not received any notice from Plaintiff as to any motions or developments in this case. Ideally, I pray that this Court vacate the Judgment of Foreclosure and dismiss the action, but if not, at a minimum, I pray that the Court vacate the Judgment of Foreclosure and provide me an opportunity to assert defenses with counsel of my choosing.

91)    No other motion for the relief sought herein is pending in this or any other court.

Exhibit 8 E Trade mortgage foreclosure documents page 83-85

*Exhibit 9  1/17/19 Parkchester North Condominium Con 20 Questionaire page 1-2*

# UNIFORM CONDOMINIUM QUESTIONNAIRE

Project Name: **Parkchester North Condominium**   Date: **01/17/2019**
Address: **1970 East Tremont Avenue.**
City: **Bronx, NY   10462**

## GENERAL INFORMATION

1. The legal name of this project is: _____
   It is a ( ✓ Condominium, or ( ) a Planned Unit Development (PUD).

2. If the project was (or is being) created by the conversion of an existing building, please provide the following:
   Age of building: **78**   Year converted: **1972**   Type of original use: **rental**

3. The project ( ✓ ) is ( ) is not a legally phased project. The project consists of **2985** units in **1** legal phases.

4. Describe the unit sales. For a fully constructed project that has been sold out, complete the below information.

| UNIT SALES | | UNIT TYPES | |
|---|---|---|---|
| Total number of units in project | **2985** | Single-Family Detached | _____ |
| Total number of units conveyed to purchases | **ALL** | Townhouse, Row, or Cluster | _____ |
| show breakdown below: | | Garden _____ No. of stories | _____ |
| Total no. principal residence units conveyed | **N/A** | Mid-rise _____ No. of stories (3-5) | _____ |
| Total no. second home units conveyed | **N/A** | High-rise _____ No. of stories (6 or more) | _____ |
| Total no. investor-owned units conveyed | **1000** | Other _____ | |
| Total no. units retained by developer/converter | **0** | | |

5. Does any investor own more than one unit ( ✓ YES·  ( · )NO. If YES, identify the investor, (the same individual, investor group, partnership, or corporation) and indicate the total number of units owned by each such investor in the project **Sponsor - Parkchester Preservation Management - 1617 Units**

6. Does any investor own more than ten percent of the total units in the project? ( ✓ YES   ( )NO

7. The recreational amenities (other than those in a master association) include: ( ) Pool # _____ ( ) Clubhouse # _____ ( )
   Tennis Court # _____ ( ) Playground # _____ ( ) Other _____ ( )

8. Are all units and facilities complete? (This included all amenities and common areas such as pool, tennis courts, roads, walkways, parking areas, landscaping, clubhouse, and renovations associated with conversions.) ( ✓ ) YES   ( ) NO
   If NO, please provide the following: _____ units is _____ Phases have been completed. Describe the incomplete items:
   _____

9. Can the project be expanded beyond its current size? ( ) YES   ( ✓ ) NO

10. Is the Owners' Association currently a party in any type of litigation or public administrative action (including any violations of any environment or public health statutes and laws or current environmental or public health litigation or administrative action)?
    ( ✓ YES   ( ) NO. If YES, describe the nature of the litigation or public action and attach any information **See attached litigation letter**

11. Has the Owners' Association been notified of any violation of any government or land-use regulations (such as zoning ordinances and coastal tideland or wetlands laws)? ( ) YES ( ✓ )NO. If YES, describe the nature of the violation and attach any information. _____

12. How is title to the units held: ✓ Fee Simple _____ Leasehold. If Leasehold, please provide a copy of the lease.

13. Are there any leased recreational facilities or any common area leases? ( ) YES ( ✓ )NO. If YES, please provide a copy of this lease.

U: Condo Info/Uniform Condo Questionnaire
5/2002

1